(No. 36990.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER GRAY, Plaintiff in Error.

*Opinion filed March 22, 1963.—Rehearing denied May 29, 1963.*

JOEL H. LEVIN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Walter Gray, was indicted for unlawfully selling a quantity of narcotic drugs. He was tried by the court without a jury, found guilty and sentenced to prison for a term of not less than ten nor more than twelve years.

On February 16, 1959, narcotics inspector Anthony Johnson and a special government employee, Lorenzo Sloan, were in a drugstore in Chicago. The defendant, pursuant to a phone call from Sloan, came to the drugstore and was introduced by Sloan to Johnson, but the

latter's official position was not disclosed. Sloan, according to the defendant, had been supplying narcotics to him for his personal use for ten months prior to February 16. Defendant further testified that Sloan told him that he had a buyer who did not buy in large enough quantities which buyer Sloan would turn over to defendant.

Upon meeting the defendant Johnson stated that he wanted to buy a "cup" of pure heroin. Gray responded that the price would be $110, which was agreed upon. Gray then told Johnson to go into the hallway of 5001 S. Parkway, approximately one block away, where the narcotics would be sitting on the window sill. Thereupon the $110 was paid to Gray and the narcotics picked up by Johnson. The defendant testified that he did not know who put the narcotics on the window sill, but that Sloan told him previously that the package would be there. Johnson testified that all of his conversations relative to picking up the heroin were with Gray and not Sloan. Sloan was not called as a witness by either side. After testing the heroin and finding it to be satisfactory Johnson then asked the defendant how he would get in touch with him in the future and defendant gave him his parents' telephone number.

The next day, February 17, Johnson called the defendant and stated that he desired to purchase additional narcotics. The defendant told Johnson that everything was fine and to "come right over" and that he had "got in touch with (his) connection", who appeared to be an individual by the name of Fields. Johnson then drove to the defendant's house and the two drove together to 63rd and Woodlawn to a drugstore where they met a man by the name of Fields, who claimed he had the narcotics ready for delivery. Agent Johnson, however, refused to turn over any money until he received the narcotics. Thereupon Gray telephoned Sloan, who also talked to Johnson

for the purpose of identifying the latter. The defendant and Johnson returned to the car. Then Gray persuaded Johnson that they should try again to persuade Fields to turn over the narcotics prior to payment. Thereupon Fields was again contacted and he agreed to meet them later. Fields at this time handed the narcotics to Johnson who then paid Fields $110, but instructed him to wait while he tested the narcotics. A field test indicated the presence of narcotics and as Johnson left the drugstore he gave a signal and the defendant and Fields were arrested. Fields was searched and the $110 in marked bills was found on his person. The defendant was indicted for his participation in the sale of February 17 only.

The defendant contends that the sales of February 16 and 17 were so interrelated that the latter must be considered as a product of an alleged initial entrapment on February 16.

The People contend that the two sales were separate, and that in any event, there was no entrapment on February 16 and, even if there was, that the defendant, by refusing to admit his guilt is precluded from asserting the defense of entrapment.

Defendant relies upon *People* v. *Strong,* 21 Ill.2d 320, where we reversed a conviction based upon a sale of narcotics which were furnished to the defendant by a government agent on the ground that the defendant had been entrapped. The evidence in this case does not, however, disclose who furnished the narcotics on the first occasion, but simply that the same were located in the hallway of a building. The defendant stated that this information was conveyed to him by Sloan. The agent Johnson, however, testified that he obtained all information regarding the narcotics, including their location, from the defendant. Moreover, there is no question but that the narcotics purchased in the transaction for which the

defendant was convicted were furnished by him through his own connection, Fields. The *Strong* case is, therefore, not applicable to the situation here presented.

The evidence does not disclose any persistent requests or appeals to sympathy on the part of the law enforcement officials as in the case of *Sherman* v. *United States,* 356 U.S. 369, 2 L. ed. 2d 848, relied upon by defendant. We have held that the use of artifice and deception such as was here employed is permissible for the purpose of providing an opportunity for the commission of a crime of this nature by one already so predisposed. (*People* v. *Wells,* 25 Ill.2d 146.) The defendant exhibited a familiarity with narcotics traffic and a ready access to a supply source. He was to receive a profit upon the sales and encouraged Johnson to try again to consummate the sale on February 17 even after they had returned to the car.

Under the circumstances here presented the defendant was not entrapped. (*People* v. *Lewis,* 26 Ill.2d 542.) It is not, therefore, necessary to consider the further question of whether the defendant, because he failed to admit his guilt of the offense charged, is precluded from relying upon the defense of entrapment. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*