**People of the State of Illinois, Plaintiff-Appellee, v. Curtis Abbott, Defendant-Appellant.**

**Gen. No. 51,953.**

First District, First Division.

June 6, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

On a 3-count indictment defendant was convicted by a jury of three offenses of the unlawful sale of a narcotic drug. On each count he was sentenced to the penitentiary for a term of 15 to 30 years, sentences to run concurrently. On appeal defendant asserts error as follows: (1) improper restriction of cross-examination of the informer as to his correct name and address; (2) entrapment; (3) improper instruction of jury; and (4) trial errors.

The record shows that Inspector Donald Norton, a member of the Illinois Division of Narcotics, posing as an addict named "Danny," and through the use of an informer, Harry Schwartz, made contact with defendant, from whom Norton made three narcotics purchases, March 11, 1966, March 12, 1966, and March 15, 1966. On April 5, 1966, Norton arrested defendant.

During the trial Norton testified that on the three occasions the narcotics were handed directly to him, and that Schwartz was present only at the first purchase. Norton knew the informer only as Harry Schwartz, although he had heard the informer referred to as Stacey. At the trial it was stipulated that the contents of the three packets delivered to Norton by the defendant was heroin.

The informer, Harry Schwartz, testified as a witness for the State. He was a narcotics addict and had known the defendant, a former addict, for about six years. After some negotiations by Schwartz with defendant,

Schwartz and Norton met defendant at 1160 North Sedgwick shortly after midnight on March 11, 1966. Schwartz introduced Norton to defendant as a "good friend." Schwartz then told defendant he had "$50 to spend" and asked if defendant could get them a "half" (a half-spoon of heroin). They all then drove to 63rd and Bishop, where Norton gave defendant $50 in prerecorded bills. Approximately forty-five minutes later defendant returned with an aluminum foil packet and gave it to Norton. Defendant was driven to his home and, before separating, the defendant gave a telephone number to Norton where he could be reached if additional narcotics were needed.

The next day, March 12, Norton telephoned defendant and asked him if he could "cop a half." Later defendant and Norton drove to the same general area in which they had met on the previous night. Upon arrival Norton handed $60 to the defendant, who left the car and later returned and handed Norton an aluminum foil packet. At that time defendant gave Norton a second telephone number where he could be reached.

On March 15, 1966, Norton phoned the defendant and asked if he could make a purchase of narcotics ["cop a half"]. Later Norton and defendant drove to 1160 North Sedgwick, where Norton gave $50 to defendant, who left and returned an hour later and handed Norton an aluminum foil packet.

Defendant testified that he had known Schwartz for about six years and by the name of Stacey. They had met two or three times in the week prior to March 11, and Schwartz begged defendant to buy some narcotics for him. He was unable to resist Schwartz's entreaties, and on March 10 Schwartz appeared to be quite ill because he was unable to secure narcotics from his usual source of supply. It was Schwartz's poor condition, coupled with defendant's knowledge of what he was going through, that caused the defendant to agree to buy nar-

cotics for him. Defendant testified he gave all the money he received from Norton and Schwartz to the person from whom he purchased the drugs. On March 12 and 15, defendant received phone calls from "Danny," telling him that Schwartz was very ill and needed more narcotics, and because of this he made the second and third purchases of narcotics for Schwartz. He said, "I did not make any money off this deal. I did not use any of the drugs," and he "would not have gotten those drugs . . . if Stacey hadn't begged me for them."

Considered first is defendant's contention that it was reversible error for the trial court, during the cross-examination of Schwartz, to prevent the disclosure to the jury of the informer's real name and address. The cross-examination of Schwartz was quite extensive. His testimony showed he had been convicted of armed robbery and had spent three years in the penitentiary. He was a current user of narcotic drugs and had been "on narcotic drugs since '51." Norton had paid him "forty or fifty dollars" on another occasion. He became a police informant to keep out of jail.

During the cross-examination of Schwartz defense counsel asked for the true name and residence of Schwartz, and the court sustained the objections of the State to such questions. In a conference between court and counsel outside of the presence of the jury, in which the objections of the State were examined and sustained, the remarks of the court included: "I think that the question of his address is not material and would only subject the witness to a possible disclosure as to his whereabouts, and for informing and testifying in this case, his life definitely would be in jeopardy and it is because of the fact his life would be in jeopardy in disclosing his address, the Court would refuse to permit the information to be divulged at this time."

Defendant's authorities on this contention include Smith v. Illinois, 390 US 129, where, on cross-examina-

tion of the principal prosecution witness at petitioner's state trial for illegal sale of narcotics, the trial court sustained the prosecutor's objections to disclosure of witness's correct name and his address. It was there held that the petitioner was denied his Sixth Amendment right, made applicable to the States by the Fourteenth Amendment, to confront the witnesses against him. The conviction was reversed. The remarks of the court included (p 130) :

> "[O]nly this witness and the petitioner testified to the crucial events inside the restaurant, and the petitioner's version of those events was entirely different. The only real question at the trial, therefore, was the relative credibility of the petitioner and this prosecution witness. . . . [p 131] In the present case there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet when the credibility of a witness is an issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself."

In Smith v. Illinois, the opinion quotes the principles set forth in Alford v. United States, 282 US 687, 694, and includes (pp 132–33) :

> "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a rea-

sonable judgment in determining when the subject is exhausted. . . . But no obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him."

In Smith v. Illinois, Mr. Justice White, in concurring, stated (p 133) :

"In Alford v. United States, 282 US 687, 694 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness."

The State argues that the principle to be applied here is set forth in Roviaro v. United States, 353 US 53, 62:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

■ Because of a substantial factual difference, we do not believe the conclusions set forth in Smith v. Illinois are controlling here. We find that in the instant case

the extent of cross-examination of the informer with respect to his correct name and address was within the sound discretion of the trial court, and the court exercised reasonable judgment in sustaining the objection of the State. The informer's background, with the exception of his true name and current address, was known to the defendant. The jury was adequately informed about the informer so as to form an opinion as to his credibility.

Considered next is defendant's contention that he was the victim of entrapment. "Entrapment" as a defense is provided for in the Criminal Code (Ill Rev Stats, c 38, § 7–12):

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

Defendant asserts that after a prolonged series of persistent requests by the informer to buy narcotics, plus appeals to sympathy, defendant's resistance broke, and "then and there, for the first time the defendant finally decided to commit the crime. Stacey's plan of pressure had succeeded and the defendant was entrapped."

The informer testified that he never begged defendant to buy drugs for him, and he denied pretending that he was sick. Inspector Norton testified that he had no knowledge that the informer "had been begging the defendant Curtis Abbott, to get him drugs for several days prior to March 11 . . . ." He also testified that he would not talk one of his addicts "into pretending he was sick" in order to get a conviction.

Defendant asserts that "the ultimate issue posed by the statute is: Who originated the criminal intent, the entrapping officers and their agents, or the defendant?" Defendant argues that once some evidence concerning entrapment is presented, the State must negate the entrapment defense beyond a reasonable doubt. Ill Rev Stats, c 38, § 3–2; People v. Warren, 52 Ill App2d 374, 380, 202 NE2d 131 (1964).

Defendant states that "while appeals to sympathy and friendship *alone* are not sufficient to establish entrapment, People v. Hatch, 49 Ill App2d 177, 185, the court implies that if there is *also* the persistent asking the defendant to buy drugs, as in Sherman [356 US 369 (1958)] and the instant case, then entrapment will be shown." Defendant's authorities on this point include People v. Wright, 27 Ill2d 557, 562, 190 NE2d 318 (1963); People v. Gray, 27 Ill2d 527, 530, 190 NE2d 368 (1963); People v. Hall, 25 Ill2d 297, 301, 185 NE2d 143 (1962).

■ Defendant's contention of entrapment here presented an issue of the credibility of the witnesses. The denial by the informer of begging for the drugs and the pertinent testimony of Norton, plus the undisputed facts of the "crucial events," if believed, was sufficient to negate entrapment beyond a reasonable doubt, and the jury elected to believe the testimony of the informer and Norton. In People v. Warren, 52 Ill App2d 374, 202 NE2d 131 (1964), it is said (p 381):

> "[T]he jury may reject defendant's story if, in itself, it is so remarkable as to almost seem incredible if there were no contradictory evidence, . . . or if the story of defendant was so improbable as to justify it in being disregarded by them, or if it was contradicted by the facts and circumstances shown in the record, . . . or if defendant's story was so unreasonable as to be judged improbable."

470

The remarks made in People v. Wright, 27 Ill2d 557, 563, 190 NE2d 318, apply here:

"A consideration of all of the evidence in this case leads us to the conclusion that the defendant was not entrapped. His conduct was merely that of a wary seller of narcotics who exhibited only the natural caution and hesitancy of one engaged in that illegal traffic rather than that of an innocent person who was enticed into committing a crime he would not have otherwise committed."

Defendant next contends that "it was reversible error to refuse defendant's instruction that a conviction for sale of narcotics cannot stand where defendant acted only as a non-profit procuring agent." Defendant argues that federal court decisions dealing with a narcotics statute analogous to the Illinois provision under which the defendant was indicted have held that where the government officials, or their informer-agents, asked the defendant to buy narcotics for them, and the defendant did act in their behalf rather than his own, buying from a third person with whom the defendant was not associated in selling, and thereafter delivering the narcotics to the buyer, then the defendant would not be the seller and could not be convicted for unlawful sale. (Adams v. United States, 220 F2d 297 (1955).) Defendant argues the evidence in the instant case was similar to that in Adams and called for the so-called "purchasing or procuring agent instruction."

 The State contends no error was committed in refusing the purchasing agent instruction because chapter 38, section 22–2–11, provides: " 'Sale' means and includes traffic in, barter, exchange, or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, broker, agent, servant or employee." The State notes that defendant asserts

471

in his brief that "he acted only as an agent." The State argues "since defendant admits on appeal that he acted as agent for the purchase, in the transaction involved, and since agency is expressly included in the definition of sale, there was no error in refusing defendant's Instruction." We agree.

In People v. Shannon, 15 Ill2d 494, 497, 155 NE2d 578 (1959), it is said:

> "We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale. Since the agency was admitted and proved, the conviction under counts for dispensing and selling was established beyond a reasonable doubt."

■ Defendant next contends that it was error to admit into evidence and submit to the inspection of the jury the packages of narcotics despite the defense's stipulation that the content of the packages was heroin. Defendant asserts this evidence had no relationship to guilt or innocence and only served to prejudice the defendant in the eyes of the jury. We believe this was a matter which was within the discretion of the trial judge. Defendant had not pleaded guilty to the charges of selling narcotics, and the exhibits in question were relevant to establish the facts in controversy. In People v. Jenko, 410 Ill 478, 102 NE2d 783 (1951), it is said (p 482):

> "[Q]uestions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge, and the exercise of that discretion will not be interfered with unless there has been an abuse to the prejudice of the defendant."

472

Defendant next contends that it was reversible error for the trial court to allow Inspector Norton to hint at defendant's police record in the presence of the jury. Upon direct examination Norton testified he recognized the defendant's name "through other investigative procedures." The court denied defendant's objection to such a reference. Defendant argues that the statement "doubtless had its effect on the minds of the jurors in prejudicing the defendant" and depriving him of a fair trial. Authorities include People v. Cage, 34 Ill2d 530, 533, 216 NE2d 805 (1966):

> "The general rule, of course, is that evidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission."

■ Although statements such as that in question may be subject to objection, we think the instant situation came within the discretion of the court and we find no error here.

Finally, the defendant argues that the trial court erred in giving and refusing various instructions. Defendant asserts the giving of State's instructions 10, 11 and 12 was improper because they were highly prejudicial by not being included in one instruction. Defendant further asserts that the court improperly refused defendant's instructions 15 and 17.

■ ■ As to the State's instructions 10, 11 and 12, the State maintains that a single instruction need not contain all the law upon a single subject. We agree. See People v. Stevens, 11 Ill2d 21, 29, 141 NE2d 33 (1957). The State further states that the two defense instruc-

473

tions, which were refused, were merely repetitious of other instructions already given—defendant's instruction 15 was rendered unnecessary by virtue of defendant's instruction 1, and defendant's instruction 17 was rendered unnecessary by virtue of defendant's instruction 14 and State's instruction 4 (both on entrapment). An examination of all the instructions given shows that the jury was accurately and fully instructed as to the law applicable to this case and on all issues presented, including entrapment. We find no error in the refusal of defendant's instructions 15 and 17.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.