THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY JOE NICHOLS, Defendant-Appellant.

(No. 72-127; )

Fifth District—February 28, 1974.

Robert E. Farrell, Deputy Defender, of Mt. Vernon (Kelly B. Hardwick, Senior Law Student), for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (James W. Jerz and Martin P. Moltz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

As a result of a jury verdict of guilty on a charge of rape, defendant Jerry Joe Nichols was convicted and sentenced to a term of 4 to 12 years by the circuit court of Madison County, from which he has perfected his appeal.

Defendant's first contention is that he was not proven guilty beyond a reasonable doubt. We have reviewed the record, with a particular view to the inconsistencies which occur in the testimony of the prosecution's witnesses, which appellant has characterized as "severe discrepancies and contradictions".

The prosecutrix testified that while she was lying on a couch, partially disrobed, with her 2-month-old baby in her arms, in the early morning hours, while she was in "a semi-sleep", some one entered the room, a person whom she had no opportunity to then observe, placed something over her face, and directed that if she made "any movement or sound and didn't do exactly what he told me to do that he would kill me and my baby". Keeping her face covered with something in his hand, he directed her to put the baby down and cross the room to turn off a light, which she did. He then directed her to lie on the floor, keeping her face covered, where after performing an act of cunnilingus he had intercourse with her; that she submitted to his directions because of his threat to kill her and her baby.

She further testified that upon the baby starting to cry she asked if she could arise and give it a bottle, and he consented; that she was unable to find the bottle and asked if she could turn on the light, gave the baby the bottle and turned on the light with his consent. He had asked her numerous times if she was going to call the police and she assured him

that she was not. She recognized him as a person she had previously seen standing on the street in the neighborhood and he told her he had previously seen her come and go from the apartment. He told her that he had been in the apartment for some time and that he and two others had been in and taken a radio that was on top of the refrigerator; that he had cut the screen on the back door to get into the apartment. He further told her that he lived in the neighborhood, had a white wife and two children. He smoked a cigarette, offered her one which she smoked, and he left leaving a package of Salem cigarettes lying on a table. She testified that upon the return of her girl friend, Linda, in whose apartment she and her baby were staying, she told her that she had been raped and the radio taken; that she was crying when Linda came home, and that Linda called the police only reporting a burglary. Her identification of this defendant was positive.

■■ The testimony of prosecutrix was clear, convincing and unshaken, and there is no reason to regard it was unworthy of belief. The general rule is that convincing testimony of the prosecutrix standing alone is sufficient to convict even without corroboration. (*People v. Mack*, 25 Ill.2d 416, 420.) Here there was corroboration of some of the facts. Linda, her girl friend, testified that as she returned to the apartment in her car she saw a man leave the back of the premises and go down an alley; that immediately upon her entering the apartment she found the prosecutrix partially disrobed and crying; that upon being told of the rape and burglary she observed that the radio had been removed from the top of the refrigerator and she found the screen to the back door had been cut and the door unlocked. She further testified that she promptly called the police and reported that prosecutrix had been attacked and the radio taken.

Police officer Parks, who responded to the call, testified that upon his arrival he found the prosecutrix partially disrobed and crying; that he found the back screen door had been cut and the door unlocked and that he found the radio sitting on the top step of the back porch; that there was a package of Salem cigarettes partially consumed lying on a table in the apartment.

A police detective, John Parker, testified that he interviewed both the prosecutrix, "the victim of the rape", and Linda on the same day as the occurrence, September 7, 1971, during the daylight hours, and that when he went to the home of defendant and arrested defendant, the defendant identified a white woman who was in the house as his wife. He further testified that at the home of defendant, the defendant took and lit a cigarette from a package of Salem cigarettes, placing the remainder of the package in his pocket.

Further corroboration was provided by a fingerprint expert, Douglas Keith, who testified that a fingerprint which he lifted from the radio matched that which he found on a fingerprint card which had been presented to him. On cross-examination, defendant's counsel elicited from the witness that the card was dated January 13, 1962. The card was admitted into evidence after the witness Parker testified that he was familiar with the signature of defendant and identified the signature upon the card as that of the defendant, during the presentation of the State's case.

Defendant contends that reversible error was committed by admission of the 1962 card into evidence, on two grounds. The first is that admission of the card constituted an improper admission of evidence that appellant had previously been arrested. The question involved is whether the prosecution deliberately introduced the 1962 card while in the possession of prints taken from appellant at the time of his arrest in September 1971. Previous to its admission Parker testified that normal procedure included fingerprinting upon arrest and upon cross-examination testified that although he was the arresting officer he did not personally fingerprint the defendant but had him booked and assumed the identification officer would do it the following morning. In response to further cross-examination by defense counsel Parker testified that prints were not taken in cases where a suspect's prints were on file due to prior arrest. At the conclusion of the State's case during which the card was admitted, defendant took the witness stand, and testified that he was printed after his arrest in September 1971. On cross-examination, without objection, defendant testified that he was probably fingerprinted on January 13, 1962, and that the signature on the card was his.

■■ Prior arrests are, under the general rule, not admissible and their submission may constitute reversible error. (*People v. Bennett*, 413 Ill. 601, 110 N.E.2d 175.) But the Illinois Supreme Court in *People v. Cage*, 34 Ill.2d 530, 533, 216 N.E.2d 805, stated:

> "The general rule, of course, is that evidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding *or establishing identity*, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission." (Emphasis supplied.)

Appellant relies on *People v. Hudson*, 7 Ill.App.3d 333, 287 N.E.2d 297, in which a witness repeatedly testified that the defendant's fingerprints were on file because of prior arrests, and on cross-examination admitted the defendant had been printed upon his arrest for the current offense. In *Hudson* the reversal was required by a combination of errors; the

fingerprint evidence, improper introduction of a "mug shot", and improperly and suggestively conducted pretrial photographic identification of the defendant by a witness.

In *People v. Abbot*, 110 Ill.App.2d 462, 249 N.E.2d 675, the court held non-prejudicial the testimony of a police officer who states that he recognized the name of the defendant through "other investigative procedures". The court thought the evidence "questionable" but within the discretion of the court as defined by *People v. Cage, supra.*, and affirmed. In *People v. Pantoja*, 4 Ill.App.3d 286, 280 N.E.2d 720, the court approved testimony by a police officer that the defendant was "brought in" and printed on a charge other than that being tried. The court found no "causal relationship" between the testimony and any possible prejudice and held the testimony necessary to lay a foundation for the fingerprint evidence. This case seems remarkably similar to the instant case. Evidence brought out by the defense, whether as a responsive answer on cross-examination of a state witness or from the defendant will not be charged as improper against the State. (*People v. McCottrell*, 117 Ill.App.2d 1, 254 N.E.2d 284.) We believe a proper foundation was laid for the introduction and identification of the card. We do not subscribe to the State's theory that the card was admissable as a business record under section 115—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., ch. 38, par. 115—5). See section 115—5(c)(2).

Appellant's argument is that the 1962 card is inadmissible under *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676, since evidence was not introduced at trial that appellant's 1962 arrest was based on probable cause or that a warrant had been issued. In *Davis*, the Court struck down a rape conviction based on fingerprint evidence gained from a "dragnet" of young blacks. The men were brought in, printed, interrogated and released. Defendant Davis was among the some twenty-four persons so apprehended. The Court held that such techniques, not supported by probable cause or warrants, violated Davis' Fourteenth Amendment rights. The Court has since distinguished *Davis*, emphasizing that it was not the fingerprinting but the "dragnet" operation which was offensive. (*United States v. Dionisio* (1973), 93 S.Ct. 764, 35 L.Ed.2d 67.) The Court also reasserted the narrow holding in *Davis* by again not choosing to reach the question whether all custodial interrogation and identification procedures must meet the same standards as those for arrests without warrants. The Court in *Davis* did not set down a specific procedure for the prosecution to follow in the admissions of fingerprint evidence. Appellant in the instant case does not assert that the 1962 arrest was improper, nor did he raise it at trial. *Davis* has not been interpreted by the Supreme Court or the courts of

Illinois in any way which indicates whether the State is required to produce evidence of the legitimacy of the arrest when seeking to introduce a previously-secured fingerprint card.

██ Defendant has contended that since the only evidence of the actual rape is that of prosecutrix, that the lack of testimony to the effect that there was no struggle or force or crying out by the prosecutrix, and the lack of testimony of a medical examination, casts severe doubt on the credibility of prosecutrix's testimony, particularly when taken with inconsistency in the prosecution's evidence as to whether prosecutrix told the police the defendant was wearing a white shirt or a light blue shirt as she recalled at the trial, and the conflict in the testimony as to whether the incident was first reported as a rape or a burglary. We believe her conduct while in the presence of defendant is reasonably explained by the evidence of threat of death to her baby and herself and the fact that her attacker covered her face. Her conduct after her face was uncovered might reasonably be explained by her attacker's concern about her calling the police and the previous threat to her baby and her, and the fact that she, by conversation, attempted to placate a defendant who had forcibly entered the apartment and threatened to kill if his commands were not complied with, are logically explained as the conduct which she considered necessary under the circumstances to avoid an even more tragic incident. There is no requirement that when an attempt is made to rape a woman she must subject herself to serious physical harm under the circumstances of being blinded and her life and that of her child threatened. (See *People v. Sims,* 5 Ill.App.3d 727, 283 N.E.2d 906; *People v. Murphy,* 124 Ill.App.2d 71, 260 N.E.2d 386.) Medical testimony is not indispensable to a rape conviction. (*People v. Boney,* 38 Ill.2d 23, 230 N.E.2d 167; *People v. Porter,* 13 Ill.App.3d 893, 300 N.E.2d 814.) Here the evidence of prosecutrix is sufficient to establish the offense of rape. The credibility of the witnesses is for the jury to determine. (*People v. Greer,* 7 Ill.App.3d 257, 287 N.E.2d 8.) Upon the state of the record in this case, the evidence does not leave a reasonable doubt as to the guilt of the defendant.

██ Appellant's final contention is that the State's closing argument was so prejudicial as to require reversal. The first allegation is that the State tried to inflame the prejudice of the jury by making reference to appellant's marriage to a white woman, though he is black. The portions cited by appellant do emphasize to the jury appellant's biracial marriage. It is true, as appellant asserts, that his failure to object to the argument has been held not to preclude review. (*People v. Romero,* 36 Ill.2d 315, 223 N.E.2d 121; *People v. Hopkins,* 124 Ill.App.2d 415, 259 N.E.2d 577.) The State contends that the reference was proper since the biracial marriage

was a point or corroboration in the testimony of the prosecutrix. The State clearly established the point at trial through her testimony, and that of Officer Parker and the appearance as a witness of defendant's wife. Appellant next contends that the State improperly attempted to impeach the testimony of appellant's wife during closing argument. Mrs. Nichols testified that her husband did not own nor had ever owned a white shirt. The prosecutrix testified that she thought the shirt was light blue but admitted possibly having told the police that it was white. During closing argument, the prosecutor stated:

"She testified that he has never worn a white shirt in his life but if you will look now he is wearing one in the Courtroom."

Appellant now asserts and the State denies that the prosecutor knew that the shirt had been provided by a penal institution. The record does not reflect the source of the shirt. The statement came at the end of the State's first closing argument to the jury, and appellant's counsel did not mention the origin of the shirt to dispel any damage done one of his witnesses. Appellant lastly contends that the State improperly introduced evidence of other crimes in his closing argument when the prosecutor suggested that defendant "was in the process of a burglary". Appellant relies on this court's decision in *People v. Parish*, 6 Ill.App.3d 587, 285 N.E.2d 606, in which this court stated:

"Likewise, final argument is improper and highly prejudicial where the jury is informed of crimes or acts of misconduct of an accused which are distinct and entirely unrelated to the one for which he is being tried."

The State, in *Parish*, had twice made references to a twelve-year-old conviction from another State. Here, the offense was not "distinct and entirely unrelated". On the contrary, it was a distinct part of the evidence. The entrance to the home and the evidence gained from the radio removed from the house were both initial and corroborated points of the evidence. Evidence of a contemporaneous crime is admissible where it establishes an element of the offense or somehow identifies the perpetrator. (*People v. Porter, supra;* see also *People v. Armstrong*, 41 Ill.2d 390, 243 N.E.2d 825.) Appellant cites other cases which are readily distinguishable. We do not consider that the prosecutor's argument denied appellant a fair trial.

We therefore affirm the judgment of the Circuit Court of Madison County.

Affirmed.

G. MORAN, P. J., and CREBS, J., concur.