THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS F. BARTELS, Defendant-Appellant.

(No. 74-91;

Second District (1st Division)—August 5, 1975.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

· Mr. JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant was found guilty of burglary and theft of property having a value in excess of $150. The court entered judgment on both verdicts and sentenced the defendant to 1-3 years in the State Penitentiary only on the burglary count.

■■ While the defendant has raised three issues for review, the principal question that presents itself to this court is whether the admission of possible inferential evidence of other crimes at the trial of the defendant denied him due process of law. The second contention of the defendant, which we will consider first, is that he was improperly convicted for theft as well as burglary. The State agrees and has cited *People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1, which holds that where two offenses arise out of the same transaction the conviction and sentence should be only as to the greater offense. Accordingly, under *Lilly* the conviction for theft will be vacated. Inasmuch as the theft conviction will be vacated, the third contention of the defendant, that is the value of the property taken as being less than $150, is not an issue.

On January 27, 1973, Bolivar Villarreal and his family left their residence in Addison, Illinois, about 2 in the afternoon to go shopping. Prior to leaving they had locked all the doors and windows. Between 6-7 o'clock of the same day one Donald Infusino and John Francione observed a green 1970 Chevrolet in the vicinity of the Villarreal residence. The car drove away with its lights off, and when they were subsequently turned on Infusino got the license number of the car. An ISPERN message was sent out by the Addison police and within an hour the defendant and another party were curbed and apprehended by officers of the Schiller Park and Franklin Park police departments. In the back seat of the car was a color television set, which the defendant said belonged to a relative. The defendant was taken to the Franklin Park police department and subsequently transferred to the Addison police department, together with the television set. When the Villarreals returned home, about 9 P.M., they discovered that the house had been burglarized by entry through a window in the kitchen area and that their color television set had been taken. The television set in the possession of the defendant was identified as the property of the Villarreals later that evening at the Addison police department. While the serial numbers of the television set and the identification of the same were being verified, the defendant, whose shoes had been taken from him, escaped. It is to be noted that this was on January 27. After he was indicted for burglary he subsequently surrendered himself at the Du Page County Jail on April 11, 1973.

We turn then to the contention of the defendant that certain evidence was before the jury from which they might infer that the defendant had

committed other crimes. At the outset it is to be noted that the defen-·
dant does not challenge the identification of his car at or near the scene
of the burglary, nor does he challenge the fact that he was in possession
of the stolen television set at the time of his apprehension, at which time
he said he got it from a relative.

■■ The officer who arrested the defendant, upon redirect examination,
was asked if he noticed anything unusual about the condition of the de-
fendant. He replied, "No," but volunteered the information that he was
familiar with the defendant through previous incidents with the police.
Defendant's counsel objected, and the volunteered statement was im-
mediately stricken from the record by the court and the jury was in-
structed to disregard the statement. Briefly, we consider this to be harm-
less error. (*People v. Abbott* (1969), 110 Ill.App.2d 462, 249 N.E.2d
675.) The other statement which defendant contends was prejudicial
was a volunteered statement by another arresting officer who stated that
the companion in the car with the defendant was a juvenile. We do not
see any prejudice in designating his companion as being a juvenile, nor
have we found any authority so holding. As the court observed, it was a
fact that the party in question was a juvenile. We find no error in this
regard.

The main thrust of defendant's contention that evidence was admitted
from which the jury might infer the commission of other crimes by the
defendant relates to the testimony of the fingerprint expert. Latent finger-
prints were taken from the window and the screen where access was
gained into the Villarreal residence. The fingerprint expert, Jacqueline
Fracaro, testified that she compared these latent prints with defendant's
prints from the Du Page County sheriff's office which she had at the
Bureau of Identification on February 22, 1973. Later it was pointed out
that this was incorrect. After a proper foundation was laid, the finger-
print expert was allowed to testify as to her mistake in comparing the
prints and she, in fact, testified that the latent prints were compared
with the fingerprints taken from the defendant at the Addison police
station on the night in question. The result of the mistake of the finger-
print expert was that two fingerprint cards were admitted into evidence,
one being the fingerprint card from the sheriff's office and the other being
the fingerprint card from the Addison police station. Much of the con-
fusion relative to the misidentification of the fingerprint cards occurred
in chambers and was not presented to the jury. The actual cards intro-
duced into evidence, as indicated above, were those taken from the de-
fendant on the night in question and those taken from the defendant
upon his surrender to the Du Page County Police after his escape.

The defendant has cited *People v. Hudson* (1972), 7 Ill.App.3d 333,

337, 287 N.E.2d 297, 301. In *Hudson* the fingerprint expert testified repeatedly as to fingerprint cards of the defendant which had been obtained from the Bureau of Identification. In that case the expert went on to testify that the comparison of the prints could have been made from comparing the latent prints with those taken at the time of Hudson's arrest. The court there went on to say:

> "The jury was thus allowed to infer prior criminality on the part of the defendant."

The facts in *Hudson* are considerably different than those in the mistaken fingerprint card situation we have before us in the instant case. In *Hudson* the fingerprint expert made repeated reference to fingerprint cards which he had obtained. That is not the case here where the expert merely made a mistaken in stating that the latent prints had been compared with the fingerprint card of the defendant which had been taken at the time of his surrender at the jail. It is also interesting to note that in *Hudson* the court there stated "In summary, while we are of the opinion that none of the errors in the record, appearing singly, would necessarily require reversal * * *" (*People v. Hudson* (1973), 7 Ill.App. 3d 333, 338, 287 N.E.2d 297, 301) but in view of the other errors committed the court there did, in fact, reverse and remand.

In *People v. Nichols* (1974), 17 Ill.App.3d 871, 874, 308 N.E.2d 848, 851, a most similar situation arose relative to the testimony of a fingerprint expert. In that case the fingerprint expert compared the latent prints of the defendant with a fingerprint card which was dated January 13, 1962, which was about 9 years prior to the offense for which defendant was being tried. The card was admitted into evidence after the police officer testified. The defendant contended reversible error was committed by the admission of the 1962 card into evidence in that it constituted an improper admission of evidence that appellant had previously been arrested. It can thus be seen that a similar mistake was made as in the case before us. The court in *Nichols* stated that the question was whether the prosecution deliberately introduced the 1962 card into evidence when the State was in possession of prints taken from the appellant at the time of his arrest, in 1971. The court went on to say that prior arrests are, of course, under the general rule, not admissable and cited *People v. Hudson,* and noted as we do herein that Hudson was reversed because of a combination of errors. The court held that the admission of the 1962 card was not error, in part because the admission of the card was based upon a good-faith belief of the State that no card existed with regard to the offense in question.

■■ In *People v. Coleman* (1974), 17 Ill.App.2d 421, 431, 308 N.E.2d

364, 371, we find a factual situation similar to the case before us. The court there stated:

"When the evidence of prior criminality is not direct, but merely *inferential*, the determinative issue is the probative and prejudicial effect of the nexus between the admitted evidence and prior criminality." (Emphasis added.)

That is the situation we find herein. It is admitted that the fingerprint expert, Jacqueline Fracaro, compared the latent prints with those of the defendant taken at the Addison police station; however, she originally testified that she compared the latent prints with the fingerprints obtained from the defendant at the Du Page County jail upon his surrender. We fail to see how the defendant would be prejudiced in this regard.

We find the evidence against the defendant herein is overwhelming. We further find that the errors complained of are harmless errors beyond a reasonable doubt. The conviction of the defendant for theft is vacated and the conviction of the defendant for burglary is affirmed.

Affirmed in part; vacated in part.

SEIDENFELD, P. J., and HALLETT, J., concur.