THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY BRYANT, Defendant-Appellant.
First District (2nd Division) No. 1—88—0402

Opinion filed September 4, 1990.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Michael W. Bolger, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:
Defendant Larry Bryant was convicted by a jury of home invasion, armed robbery and aggravated battery and acquitted of attempted murder. The circuit court held that the other offenses merged into home invasion, entered judgment on that charge only and sentenced defendant to 16 years' imprisonment.

On appeal, defendant alleges that (1) the jury's verdict was the

result of prejudicial error arising from the admission of the complaining witness's testimony which revealed defendant's past criminal record; (2) "staged" photographs of the crime scene taken several days after the alleged home invasion took place constituted prior consistent statements of the complaining witness and were therefore inadmissible hearsay; and (3) the testimony of the complaining witness was unreliable as a matter of law, creating a reasonable doubt as to his guilt. We affirm.

At trial, the victim, Georgia Walker, testified that in the late evening of May 1, 1987, she was playing cards in her home with two female neighbors. During the game, which lasted about four or five hours, until one or two o'clock in the morning, Walker drank three "tall" cans of beer. (She explained that since one of the women did not drink, two of them split a six-pack in half.) Before the neighbors left, Walker gave one of them her own and another neighbor's rent payments and put the remaining $34 into the pocket of her four-year-old son's jacket, which was lying on the couch. Before retiring to bed, she left the kitchen window slightly open and made certain the back door was locked from the inside with a chain. Outside it was raining.

Sometime during the night, Walker got up from bed, went into the bathroom and fell asleep while sitting on the toilet. She was awakened by the presence of a man whom she immediately recognized and said, "Larry, what are you doing here?" The man flashed a knife and said, "Give me your money, bitch." She answered, "What money?" and he started stabbing her in the head—on her forehead, over her eye and behind her ear. When she raised her hands to protect her face, he stabbed her in the stomach. At this time, Walker was still sitting in shock on the toilet and thought she was "daydreaming." When she looked up, she saw another figure who appeared to be a woman wearing a black down coat coming up the stairs. After the woman turned around and went back down, Walker heard a female voice from downstairs saying, "Baby, I found it." At this point the man left the bathroom doorway and went down the steps.

Walker then stood up, looked in the mirror and, after noticing that she was covered with blood, knew that she was not "daydreaming." She immediately ran to her bedroom and then downstairs to the kitchen to call the police, but both telephone lines were dead. Realizing that the wires had been cut, she ran next door through the rain and yelled out to her neighbor to call the police.

Back inside her house, Walker noticed that the kitchen window was open wider than when she went to bed, that there was a puddle of water in the middle of the kitchen floor with wet footprints around

it, and that the back door was slightly ajar. Upon a later inspection, she found that the screen of the kitchen window had been cut.

Chicago police officer Nancy Riggio testified that when she arrived at the house in the early morning hours of May 2, 1987, she found Walker bleeding and in a state of hysterics. At that time, Walker told the officer that she heard a noise in the night and when she went out into the hallway outside her bedroom to investigate, she was accosted by a man she immediately recognized as Larry, who demanded her money and began stabbing her. After talking to the police, Walker was taken to the hospital, where she received stitches for the stab wounds to her head.

At the time of the incident, according to Walker, she was living with her four-year-old son in a row house managed by the Chicago Housing Authority. The living room and kitchen were on the first floor, and two bedrooms and a bathroom were on the second. The back door had a security gate which did not lock. A small window next to the door was protected by burglar bars, but the main kitchen window was not. Whenever it rained and the kitchen window was open, water would come in and form a pool in the middle of the floor. Walker habitually left the light turned on in the upstairs bathroom throughout the night for the benefit of her child. The light, a light bulb located in the middle of the ceiling about a couple of feet forward from the toilet, was shining on the night she was attacked.

Defendant, whom Walker recognized as her assailant, had been her boyfriend from 1981 to 1983, when he went to prison. Upon his return in August 1986, they resumed their relationship briefly for a few months, until Walker brought it to an end in October and took back the key to her house. Near the time of the incident, defendant still visited Walker occasionally, but had to be admitted by someone at the door.

The defense called two witnesses. Carolyn Jackson, director of food services at the Community Care Nursing Home, testified that defendant had a good reputation for honesty at the nursing home, where he was employed as a cook from November 1986 to February 1987. Sarah Bryant, who had been married to defendant about eight months at the time of trial, testified that on the night of the incident she was at home with him and her three children. They ate, watched television and went to bed. Some discrepancy exists concerning the night about which she actually testified, because defense counsel examined her about May 2, 1987, the night after the attack, whereas the prosecutor cross-examined her about May 1, 1987, the eve of the attack. At the time of trial, she was on probation for aggravated bat-

tery for beating and tying up a woman inside the woman's home. Defendant did not testify.

Defendant first alleges that Walker's two references to his prior stay in prison deprived him of a fair trial. During Walker's direct examination, defense counsel made a motion at sidebar asking the State not to elicit any testimony from her about defendant's prior prison sentence. The following colloquy took place:

"MR. CUDA [Defense attorney]: I'd like to make sure that counsel does not in any way suggest that Mr. Bryant was in the pen after 1981.

MS. CESARIO [Assistant State's Attorney]: If I used hiatus [*sic*] in the motion, I am not going to say anything now. I know what the rules are.

MR. CUDA: I hope the wind won't let that slip out.

THE COURT: But I am instructing Ms. Cesario not to inquire in any way as to that—bring that out, and if it slips out I can't help that, we will have to deal with it then."

The assistant State's Attorney then resumed questioning Walker about her relationship with defendant. After the eighth question, the examination continued as follows:

"Q. And prior to May 2, 1987, did Mr. Bryant ever come to your house?

A. Yes.

Q. Now, the times he came to your house, did [he] have a key at those times?

A. No.

Q. Did he have a key?

A. I gave him a key.

Q. Had you given him a key?

A. After we resumed our so called relationship when he got out of prison.

Q. In August of 1986?

A. Yes."

Defense counsel did not object. The following exchange took place during Walker's cross-examination:

"Q. [Defense attorney]: Now, you told us earlier that you and Larry were boyfriend and girlfriend for some length of time, is that right?

A. Yes.

Q. Now, Larry left you, isn't that right?

A. He what?

Q. Larry left you, isn't that right?

A. Yes. He went in the penitentiary. Yes."

■■ ■ The State argues that defendant waived his right to raise the admission of the offending statements on appeal. In order to preserve an error for review, a defendant must both object to the error at trial and raise the error in a post-trial motion. (*People v. Enoch,* 122 Ill. 2d 176, 185-90, 522 N.E.2d 1124, 1129-31, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) In *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820, the supreme court explained the waiver rule as it pertains to evidentiary objections as follows:

> "An objection to the admission of evidence, to be available, must be made in apt time, or it will be regarded as waived. The general rule is that the admission of incompetent evidence must be objected to, if at all, at the time of its admission. *** Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike it out after its admission *** generally constitutes a waiver of the right to object and cures the error, if any. *** A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial."

In *Trefonas,* defendant failed to make any objection at trial to evidence that on appeal he urged was incompetent hearsay. Although here defendant complained of the offending testimony in his motion for a new trial and also raised an objection to its admission before it surfaced during Walker's direct examination, he made no contemporaneous objection to it once it came out. In *People v. Caballero* (102 Ill. 2d 23, 464 N.E.2d 223, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362), where defense counsel made a contemporaneous objection to certain allegedly improper statements the prosecutor made during closing arguments, the supreme court held that defendant failed to preserve any alleged error arising from those statements, because, despite defense counsel's objection, the judge did not rule on the objection, nor did counsel request a ruling or call the judge's attention to the fact that he did not rule.

In the present case, the trial judge all but invited defense counsel to object when during the sidebar he told counsel that "if it slips out *** we will have to deal with it then." By sitting by in silence when Walker referred to defendant's criminal record during her direct examination by the State, defense counsel prevented the trial judge from ruling on his earlier objection in the context of her testimony. Moreover, with respect to Walker's reference to the penitentiary

which surfaced during her cross-examination, although her answer went beyond a simple "yes," it was responsive to a question that was both provocative because it implied that defendant chose to leave her of his own free will and ambiguous because it was not specific as to which of two times they terminated their relationship. We find that in this situation, "defendant's only complaint can be with the question posed and not the answer given" (*People v. Robinson* (1990), 197 Ill. App. 3d 1012, 1016); we therefore consider this alleged error waived.

■ Even if it were properly preserved, however, defendant's failure to object to Walker's testimony during her direct examination would work against him as well. Numerous cases in Illinois dealing with a potentially damaging statement inadvertently uttered by a State witness hold the error to be harmless as long as the trial court sustains defendant's objection and strikes the testimony from the record with a cautionary instruction to the jury to disregard it. (*E.g., People v. Mays* (1988), 176 Ill. App. 3d 1027, 532 N.E.2d 843; *People v. Guzzardo* (1979), 69 Ill. App. 3d 252, 387 N.E.2d 896; *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793; *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999; *People v. Bartels* (1975), 30 Ill. App. 3d 551, 333 N.E.2d 457.) Especially instructive is *People v. Precup* (1977), 50 Ill. App. 3d 23, 365 N.E.2d 1007, *aff'd* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, in which the court held it was harmless error to admit a police officer's unsolicited testimony about the defendant's criminal record, where the trial court sustained defendant's objection, but counsel refused the court's offer to admonish the jury. Here also, if defendant chose to stand by in silence while the complaining witness spoke of his criminal past, he must similarly keep his silence before the reviewing court. We also note that in this case we are not dealing with a courthouse-wise police officer who may be chargeable with a heightened awareness of the danger of making idle references to the criminal history of the accused. See *People v. Goodwin* (1979), 69 Ill. App. 3d 347, 349, 387 N.E.2d 433, 435; *People v. Curry* (1975), 25 Ill. App. 3d 637, 640, 323 N.E.2d 778, 780.

Defendant relies on *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778, in which the trial judge overruled an objection to an unresponsive answer of a police officer during cross-examination indicating that the defendant was being sought for rape. *Curry* offers no assistance in the case at bar, for here a lay witness gave a responsive answer. Moreover, unlike in this case, the State in *Curry* conceded that a mistrial would be appropriate if what defense counsel elicited was so prejudicial that a limiting instruction could not cure it. Here, since defense counsel raised no objection at trial which would have

given the court an opportunity to admonish the jury, defendant effectively waived the alleged error.

Defendant maintains that there was error in the introduction of photographs of the victim's home which were not taken on the date of the offense. Defendant particularly complains of three photographs: one of the telephone lines in the victim's living room depicting how it looked before they were cut; one depicting the victim's son's jacket lying on the sofa the way it was positioned before the break-in; and one showing a partially opened kitchen door the way the victim found it after the break-in. According to defendant, the pictures should have been excluded because: (1) they were prior consistent statements of the complaining witness about the condition, location and position of physical objects in her home on the night in question (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41; *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387); and (2) they were introduced for the purpose of advancing the theory of the State's case rather than depicting physical facts at the time of the crime (*People v. Crowe* (1945), 390 Ill. 294, 61 N.E.2d 348; *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 435 N.E.2d 706).

■ The decisions in *Emerson* and *Davis* set forth the general rule that out-of-court statements may not be introduced to corroborate the testimony of a witness at trial. Prior consistent statements may be admitted only for the purpose of rehabilitating a witness charged with recent fabrication or motivation to testify falsely. At issue in *Emerson* was a prior identification of the defendant by a State witness. In *Davis* the defense complained of nine instances wherein various witnesses repeated the victim's account of an armed robbery. Neither decision concerned the admissibility of photographs.

■ The State accurately points out that the chief requirements for introducing photographs into evidence are their relevancy and accuracy. (*People v. Myles* (1985), 131 Ill. App. 3d 1034, 1042, 476 N.E.2d 1333, 1339.) An accurate photograph is one which is "identified by a witness as a portrayal of certain facts relevant to an issue and [is] verified by such witness on personal knowledge as a correct representation of these facts." (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 452, 440 N.E.2d 961, 965.) Thus, according to the State, "the salient inquiry is not when the photographs were taken but, rather, they are accurate." In *People v. Lazenby* (1949), 403 Ill. 95, 85 N.E.2d 660, *cert. denied* (1952), 344 U.S. 842, 97 L. Ed. 655, 73 S. Ct. 56, the supreme court held that a photograph of an arson scene taken a day after the fire was admissible even though the rags that served as the "incendiary torch" had been removed, then later re-

placed by a fireman. One of the main considerations for the court was that the fireman had replaced the rags in approximately the same position in which he had found them so that the change in conditions and rearrangement of objects were insufficient to affect the accuracy of the photograph.

■ In the present case, the victim testified during direct examination that the photographs were true and accurate representations of the various aspects of the crime scene as they appeared on the night of the robbery. Also, defense counsel cross-examined the victim regarding the conditions under which the photographs were taken. Walker agreed that they were taken "sometime later" when law enforcement personnel made a special trip to her home, and said that the photographer told her to open the kitchen door "similar to the way it was opened on the night or the morning of May 2." Since the State laid a proper foundation for the introduction of the photographs and the defense took advantage of the opportunity to cross-examine, we conclude that the photographs were properly entrusted to the jury for an evaluation of their probative value.

■ Defendant relies on *People v. Crowe* (1945), 390 Ill. 294, 303-04, 61 N.E.2d 348, 353, for the proposition that "[p]hotographs of a scene or objects which have been posed or arranged by one party, for the purpose of taking the photograph, in the way or manner sought to be shown are not admissible." In that case, the court concluded that the defendant sought to introduce a posed photograph to support the theory of his defense. Here, to the contrary, the State introduced the photographs not for the purpose of advancing any theory, of linking defendant to the crime, for example, but simply to show that physical facts as they existed prior to and after the time of the crime. Accordingly, we find that the photographs were properly admitted.

Defendant also advances *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 435 N.E.2d 706, as a recent restatement of the rule in *Crowe*. Although the *Andrews* court quoted the rule from *Crowe*, it subsequently distinguished the two cases because in *Crowe* defendant offered a photograph of the "offense" (of himself taken at a later date at the site of the crime, depicting the impossibility of his involvement), whereas in *Andrews* the State offered a photograph of defendant taken during his confession, demonstrating how he held down the murder victim. The *Andrews* court concluded that the State properly offered the photograph as a visual aid to the jury in understanding the testimony of the detective to whom the defendant confessed. The court also held that the photograph satisfied the basic conditions of admissibility, relevancy and accuracy, because it accurately portrayed

what the detective saw. In this respect, *Andrews* lends support to the State in the present case, wherein the photographs, albeit taken at a later date, accurately portrayed the victim's house as she saw it surrounding the time of the burglary.

██ █ Finally, defendant contends that his conviction cannot stand because the victim's testimony was unreliable as a matter of law. It is true that the entire case against defendant hinges on the testimony of Walker, who knew him at least six years prior to the attack, had been romantically involved with him and was in a semiconscious state when the attack occurred. However, as stated in *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472 (quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89), *cert. denied* (1990), ____ U.S. ____, 111 L. Ed. 2d 798, 110 S. Ct. 3290, in reviewing the sufficiency of the evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Applying this standard to the evidence at hand, we defer to the verdict of the jury and affirm defendant's conviction.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.