THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ECOMA BANKS *et al.*, Defendants-Appellants.

Third District    No. 78-94

Opinion filed April 5, 1979.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellants.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendants Ecoma Banks and Kenneth Hamilton appeal from their felony-theft convictions which arose out of the sale of a stolen automobile to undercover agents. Defendants were indicted for the offense of theft of property having a value in excess of $150 in violation of section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)). Specifically the indictment charged that on July 1, 1977, Banks, Hamilton, and James Marshall exerted unauthorized control over a 1974 Pontiac belonging to Fred Emich Ford, Inc.

At the jury trial which followed, the State first established that a 1974 Pontiac Grand Prix automobile was discovered missing from the used car lot of Fred Emich Ford, Inc., on June 30, 1977, and that the automobile had been purchased a short time before for $3,300. Thomas Heavey, a special agent for the United States Treasury Department, testified that while working at an undercover storefront fencing operation in Joliet, he had a conversation with Banks, Hamilton, and Marshall about 5:30 p.m. on June 30, 1977, during which Banks indicated that they had a car for Heavey. Marshall mentioned that the car was a 1974 Pontiac, and Hamilton said that they had "ripped it off" in Joliet. In accordance with Heavey's instructions, the three men brought the car to the store the next day, July 1, and Heavey gave Marshall $250 for it. Heavey also testified to a transaction on June 24, 1977, with Banks and Hamilton when, with another man, they brought to the store an assortment of items that had been stolen in Lockport, including a television, radio, movie equipment, and stereo equipment. Both the June 24 and the July 1 transaction were filmed by hidden video tape cameras, and the two films were shown to the jury.

The first witness called by the defense was John Malone, another Treasury agent who had assisted with the covert fencing operation. Malone recalled the conversation with Banks, Hamilton and Marshall about 5:30 p.m. June 30, 1977, when Banks mentioned having a car for sale; Marshall said it was a 1974 Grand Prix; and Hamilton indicated they

had stolen it in Joliet. Malone stated that the three men returned with the automobile on July 1, and that neither Banks nor Hamilton was given any of the $250 paid for the car. Hamilton then took the stand to testify that on June 30, 1977, he was living with Banks, who was his cousin, when Marshall came to Banks' house in a 1974 Pontiac, and Banks went for a ride with Marshall while Hamilton stayed home. The next day, Marshall returned and asked Banks to follow him to the store and to give him a ride back. Banks did so, and Hamilton went along, but neither Banks nor Hamilton drove the Pontiac and neither of them received any money from the sale of the car. Hamilton admitted that on June 24, 1977, he and Banks sold some stolen goods at the store operated by the undercover agents.

The jury found both defendants guilty of theft as charged. For purposes of sentencing, the instant case was consolidated with several other cases involving Banks and Hamilton. At the conclusion of the sentencing hearing, Banks was given a term of five years probation upon the condition that, *inter alia*, he serve two years periodic imprisonment, and Hamilton was also given a five-year term of probation conditioned upon, *inter alia*, his serving six months in the county jail. In each case, the term of probation was to run concurrently with probationary terms for other crimes. Defendants have perfected this appeal, urging first, that a pretrial motion to suppress the videotapes was erroneously denied and, second, that the prosecuting attorney committed reversible error during closing argument. We affirm the conviction of each defendant.

In their initial brief filed in this appeal, defendants contended that the videotape evidence should have been suppressed because the judicial authorization was overly broad in that it sanctioned the recording of any conversation with four named law enforcement officers during a 10-day period. However, in their reply brief, defendants concede that this issue was disposed of by this court's recent decision in *People v. Childs* (3d Dist. 1979), 67 Ill. App. 3d 473, 385 N.E.2d 147, where the same judicial authorization by the Circuit Court of Will County for the use of an eavesdropping device in connection with this undercover investigation was ruled to be lawful. We agree and find that the videotapes were properly admitted into evidence in the case before us.

The second error assigned relates to the following statement in the rebuttal portion of the prosecutor's closing argument:

"I'll give you four words, we find them guilty because they are. They are in it up to their necks, and they're trying to get out of it by blaming it on a man who isn't here, by blaming it on Agent Heavey, by blaming it on Agent Malone, by blaming it on everything and everybody but their own greed * * *."

Defendants object to the reference to Marshall's failure to testify because in pretrial proceedings, their motion for a writ of *habeas corpus ad testificandum* to compel Marshall's appearance as a witness was denied. The theft charge against Marshall had been severed, since he intended to plead guilty, but the cause was still pending, and Marshall himself was incarcerated in the penitentiary at Menard, Illinois, apparently on other charges. When the motion for a writ was presented to the court, Marshall's attorney indicated that, if called to testify, Marshall would invoke his fifth amendment privilege against self-incrimination. The trial court then refused to compel Marshall's appearance. The practice of calling a codefendant as a witness where the witness has indicated a refusal to testify, thereby compelling him to claim his privilege against self-incrimination, was condemned as prejudicial in *People v. Myers* (1966), 35 Ill. 2d 311, 334, 200 N.E.2d 297. Defendants do not dispute the propriety of the trial court's refusal to issue the writ, but they claim the court erred when their objection to the prosecutor's argument was overruled.

■■ Defendants reason that the State should not be allowed to comment upon defendants' failure to call Marshall as a witness since it was not within the power of defendants to produce Marshall. (*People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286.) Usually a party's failure to call a witness who has knowledge of the circumstances of the case gives rise to an inference that the witness would testify unfavorably to that party. Since any such inference would be improper in this case, defendants claim they were prejudiced by the prosecutor's comment. We do not agree.

■■ In the first place, when the entire statement is considered, it becomes obvious the prosecuting attorney was commenting primarily upon defendants' attempt to shift the blame to others and in fact no specific reference was made to the failure to call Marshall as a witness. In the *Munday* case relied upon by defendants, the State had argued at length that the defendant had a *duty* to call certain witnesses, even though it was known they would refuse to testify upon the ground of self-incrimination. That comment was far more objectionable than the argument complained of in the case at bar.

Secondly, the State's comment here was in response to defense counsel's prior closing argument in which he initially stated that his client admitted commission of the theft occurring on June 24th and then said:

"He knows he did wrong on the 24th, but on the 1st of July, *Marshall* was the one that sold them the car, *Marshall* was the one that got the money. You saw my client standing there, practically saying nothing, practically saying not a word." (Emphasis added.)

Our courts have often observed that a prosecutor has great latitude in presenting his closing argument (*e.g., People v. Franklin* (1st Dist. 1976),

42 Ill. App. 3d 408, 355 N.E.2d 634), and particularly when responding to an opponent's arguments (*People v. White* (2d Dist. 1977), 52 Ill. App. 3d 517, 367 N.E.2d 727). The supreme court has stated the applicable standard to be as follows:

> "The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him. [Citation.] The general atmosphere of the trial is observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld." *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327. See also, *People v. Dykes* (1st Dist. 1978), 66 Ill. App. 3d 403, 383 N.E.2d 1210.

In cases where the prosecutor has mentioned a defendant's failure to testify in response to defense counsel's comments, we have held that such invited response is not error. (*People v. Hasting* (3d Dist. 1978), 56 Ill. App. 3d 724, 372 N.E.2d 702; *People v. Bolton* (3d Dist. 1976), 35 Ill. App. 3d 965, 343 N.E.2d 190.) The same rule applies here. When we consider the prosecutor's comments in context, we find that the trial court's ruling was correct. The judgment of the Circuit Court of Will County is, therefore, affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.