THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ECOMA BANKS *et al.*, Defendants-Appellants.
Third District    Nos. 77-497, 77-494 cons.

Opinion filed April 26, 1979.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellants.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendants Ecoma Banks and Kenneth Hamilton appeal from their convictions for burglary and felony theft following a jury trial in the Circuit Court of Will County.

Defendants were charged by indictment with feloniously entering the home of Bonnie Grachan on June 23, 1977, and with exerting unauthorized control over property having a value in excess of $150, specifically a television set, tape-player, turntable, movie projector and police scanner. At trial the State introduced evidence to show that Ms. Grachan returned from vacation on June 24, 1977, to discover her front door standing open and several items missing from the house. The missing items were identified, and the total cost of the items was estimated to be $888. Nothing was missing from the garage which contained an antique car, snowmobiles and a lawnmower. A neighbor testified that the house was in order on the evening of June 23.

Thomas Heavey, a special Treasury agent, testified that, while working at an undercover fencing operation in Joliet, he saw Banks and Hamilton with King Lincoln, on June 24, 1977. He stated, over defense objection, that he had previously known Banks and Hamilton. Upon learning that defendants had some items to sell, Heavey told them to return in an hour which they did, bringing a television set, a turntable, a projector and two other pieces of equipment to the store operated by the undercover agents. When asked where the equipment came from, Banks said it was from Lockport and that he "owed them because they locked him up and took away his driver's license the week before." The trial court overruled defendants' objection to that statement. Heavey also testified that Banks went on to say that the equipment came from a house which also had snowmobiles, a lawnmower, and a Model T in the garage. After negotiating over price, Heavey paid $250 for the equipment which he identified at trial as the same property as that identified by Ms. Grachan.

The entire transaction between defendants and Heavey was videotaped by a hidden camera and recording equipment. The film was shown to the jury, the court having previously denied defendants' motion to suppress the film. Defendants objected to various portions of the tape, particularly to the part where Banks said he "owed Lockport" because they locked him up the week before, and to another part where Heavey asked defendants if they got these items from the same place as the lawnmower. These objections were overruled.

The only evidence for the defendants was by a Lockport police officer who testified that fingerprints found in the Grachan house did not match those of Banks and were not compared to those of Hamilton, Lincoln, or the Grachans.

During the State's rebuttal argument, the prosecutor mentioned the property sold by defendants and argued:

"Where did they get it from? Lockport. Why? Because he

wanted revenge, right here, can't keep his mouth shut about that either."

The jury returned verdicts of guilty against both defendants on both the felony theft and burglary charges. Defense counsel presented an oral motion for a new trial, stating that he wished to raise several matters in closing argument "in addition to all those * * * raised and pointed out in the course of the trial." The motion was denied.

For purposes of sentencing, the instant case was consolidated with several other cases involving Banks and Hamilton. At the conclusion of the sentencing hearing, Banks was given a term of five years probation upon the condition that, *inter alia*, he serve two years periodic imprisonment, and Hamilton was also given a five-year term of probation conditioned upon, *inter alia*, his serving six months in the county jail. In each case, the term of probation was to run concurrently with probationary terms for other crimes. Defendants have appealed, contending, first, that the pretrial motion to suppress the videotapes was erroneously denied and, second, that objections to evidence and arguments relating to other crimes were erroneously overruled. We affirm.

■▌ In their initial brief filed in this appeal, defendants contended that the videotape evidence should have been suppressed because the judicial authorization was overly broad in that it sanctioned the recording of any conversation with four named law enforcement officers during a 10-day period. However, in their reply brief, defendants concede that this issue was disposed of by this court's recent decision in *People v. Childs* (3d Dist. 1979), 67 Ill. App. 3d 473, 385 N.E.2d 147, where the same judicial authorization by the Circuit Court of Will County for the use of an eavesdropping device in connection with this undercover investigation was ruled to be lawful. We agree and find that the videotapes were properly admitted into evidence in the case before us. See also *People v. Banks* (3d Dist. 1979), 70 Ill. App. 3d 51, 389 N.E.2d 174.

■▌ Defendants also claim that four references to prior criminal activities constituted reversible error. The first of these was Agent Heavey's statement that he knew defendants before the June 24 transaction. Defendants argue that in the context of this case, Heavey could only have known defendants from a prior business transaction in connection with the covert fencing operation. Such a construction strains our credulousness. The reference to a prior acquaintance was just as susceptible to an inference of innocent social contact as to prior criminal conduct.

The Illinois Supreme Court has said:

"The general rule, of course, is that evidence of commission of

other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission." (*People v. Cage* (1966), 34 Ill. 2d 530, 533, 216 N.E.2d 805. Also *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.)

Since Heavey's prior knowledge of defendants was material and relevant to his identification of them, as well as to common design and plan, the trial court did not err in its ruling. *People v. Cage; People v. Abbott* (1st Dist. 1969), 110 Ill. App. 2d 462, 249 N.E.2d 675, *cert. denied* (1970), 398 U.S. 940, 26 L. Ed. 2d 275, 90 S. Ct. 1851.

■■ Defendants also contend that the court erred in refusing to strike two parts of the film, one being Banks' reference to getting the equipment in Lockport where he had been locked up and deprived of his driver's license the previous week, and the other being Heavey's question whether they got this property at the same place as a lawnmower. Heavey also testified to Banks' statement about being locked up in Lockport, and the prosecutor referred to a possible revenge motive in his closing argument. The reference to a lawnmower would be susceptible to various inferences and did not necessarily suggest commission of some other crime, particularly in view of the fact that defendants responded negatively to Heavey's question. Hence, we believe the admission of that evidence was not an abuse of discretion.

■■■ The statement concerning Banks' Lockport lockup on its face refers to a possible motive for this crime. Defendants argue that any such construction is "patently frivolous" since financial gain was a more likely motive, but motivation for criminal conduct can surely be as whimsical and illogical as human experience in general. If we were to limit evidence of motivation to those motives that are logical and comprehensible to the noncriminal mind, many cases would fail. Once again we think the determination of the admissibility of this evidence was well within the scope of the trial court's discretion, and we find no error. The same is true as to the prosecutor's reference to the revenge motive in closing argument.

■■ Defendants also argue that admitting Banks' statement as evidence of motive was improper because the State took the position during the conference on instructions that motive was not an issue in this case. We fail to see the merit of this contention. Obviously motive was not a contested matter after the evidence of Banks' admission of his motive had been presented. Such a situation does not call for a reversal on review.

We must also observe that, even if the disputed testimony was

improperly admitted into evidence, any error was harmless because the evidence of defendants' guilt was so overwhelming that a verdict of guilty would have been returned without this evidence. (See, *e.g.*, *People v. Butler* (1st Dist. 1978), 63 Ill. App. 3d 132, 379 N.E.2d 703.) Any practicable prejudicial impact of the evidence was diminished by the strength of the evidence of the defendants' guilt. The film and other testimony established beyond a reasonable doubt that defendants were guilty of the crimes charged.

We therefore affirm the judgment of the Circuit Court of Will County.

Affirmed.

ALLOY and SCOTT, JJ., concur.