THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANGEL L. PANTOJA, a/k/a SALVADORE MOLINA, a/k/a LUIS RIVERA, Defendant-Appellant.

(No. 54226;

First District—March 3, 1972.

Gerald W. Getty, Public Defender, of Chicago, (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Brent F. Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

At the conclusion of a jury trial defendant was found guilty of the crime of burglary and sentenced to a term of three to eight years. On appeal he contends: (1) that he was prejudiced in the eyes of the jury by bruises caused by an attack upon his person by court personnel, and (2) that the prosecutor improperly elicited testimony that defendant was arrested for a different crime and that defendant used assumed names.

The evidence presented by the State is summarized as follows:

Ann Etzig testified that at approximately 8:45 A.M. on June 6, 1967, she left her apartment at 537 West Eugenie in Chicago. She returned at approximately 5:30 P.M. to find the apartment ransacked and various items missing. The transom was open and lying on top of the kitchen door which was open. The premises were locked securely when she left for work and she had given no one permission to enter.

Police Officer Andrew Baumann testified that on June 6, 1967, he responded to 537 West Eugenie where he met Etzig. The premises were in a state of disarray and the transom was open with the shaft busted, and resting on top of the rear door which was also open.

Police Officer Thomas Ginnelly, an evidence technician, testified that on June 6, 1967, he went to Etzig's apartment at 537 West Eugenie where he examined the crime scene. He found, photographed and lifted fingerprints from an inside wall and the outside portion of the transom glass.

Detective Steven Schwieger testified that he arrested the defendant at approximately 7:00 A.M. on October 22, 1967.

Police Officer Eugene Offerman testified that he fingerprinted defendant on the evening of December 1, 1967.

Police Officer Joseph Mortimer, a fingerprint technician, after being duly qualified, testified that fingerprints left exposed to sun, wind and other elements may last but an hour, while those left indoors and undisturbed might last a few days. The lifts and photographs taken from the fingerprints on the wall were not suitable for comparison. In his opinion defendant's fingerprints and those taken from the transom glass were identical.

Defendant presented no evidence.

*Opinion*

■■ (1) After testimony had established that fingerprints had been taken from the crime scene, the prosecutor, out of the presence of the jury informed the court that the State had intended to call a specific witness to authenticate fingerprints taken from defendant. Because that witness was not sure that it was defendant who was fingerprinted, the prosecutor requested the court to require defendant to submit to fingerprinting. After discussion and argument over the propriety of such a ruling, the court ordered defendant to allow his fingerprints to be taken and recessed until the next day.

On that next day defense counsel registered his shock over the treatment defendant received from the court personnel whereby they forced defendant to submit to fingerprinting. Although defense counsel did not personally witness any physical abuse to defendant, he stated: "[defendant] has been struck on the right eye and there is a blackening of that eye. He has a bump on the right side of his head where he was struck.

He is limping. His legs have been injured. Your arm, too? All right. I'd like the record to show there are marks and bruises on or about his right arm." Defense counsel went on to say that he did not know whether or not the jury would notice defendant's bruised eye.

The prosecutor responded by saying that only after four or five minutes were spent in an attempt to persuade defendant to submit voluntarily, "legal force" was used to carry out the court's order. Any force applied to defendant came only after defendant resisted.

The trial judge then stated that on the previous afternoon he told the State's Attorneys that defendant might not cooperate and that they should have sufficient personnel to get defendant's fingerprints. The judge then expressed his belief that the force applied was not excessive.

A different police officer who had previously taken defendant's fingerprints, but who had been on furlough the day before, returned in time to testify as above set forth and the fingerprints obtained from defendant during the course of his trial were not introduced into evidence. Because of this and because defendant's contention relates solely to the prejudice which accrued to him as a result of the jury seeing him in his allegedly beaten condition, it is unnecessary to consider the constitutional aspects of the court's action in requiring defendant to submit to fingerprinting. It is also unecessary to consider the question of the alleged illegal nature of the force used against defendant and the availability of contempt proceedings as the proper mode of enforcement of the court's order, as those matters are irrelevant to a direct review of defendant's conviction. Thus, the sole question is whether defendant's allegedly beaten appearance prejudiced him in the eyes of the jury.

While the defense counsel at trial registered amazement at defendant's treatment the court personnel indicated that force was used upon defendant only to the degree necessary to open his fist and that the application of force came only after defendant forcibly resisted. Thus, the exact nature of defendant's bruised condition is not known and the comment by the defense counsel, "I don't know if the jury will notice the bruised eye or not," indicates that the jury may not have seen defendant's bruises. It is also noteworthy that defense counsel, although he protested vigorously over the treatment defendant received, did not raise the question of prejudice in the trial court where the judge could have evaluated the effect of defendant's appearance upon the jury. Additionally, the jury was instructed not to allow sympathy or prejudice to influence their finding but rather to base that finding only on the law and evidence presented at trial.

While we feel that it is a sad commentary on the State of civilization in our community when conduct within the confines of a courtroom and

under the supervision of assistant State's Attorneys is reduced to the use of force against a defendant, we also believe that no prejudice resulted to defendant out of the incident in this case.

■■ (2) Defendant next contends that error was committed when Offerman testified that he fingerprinted defendant when he was "brought into" the police station lockup on December 1, 1967. Defendant urges that this testimony coupled with the earlier testimony that defendant was arrested on October 22, 1967, for the burglary of Atzig's apartment, informed the jury that he was arrested and brought to the police station on a charge other than that for which he was tried. We fail to see the causal relationship between the testimony and the inference defendant contends the jury would have drawn. Moreover, Offerman's testimony was necessary to lay the foundation for the introduction of the fingerprints which were compared with those left at the crime scene and as such the testimony was relevant and not a ground for reversal. See generally, *People v. Dewey* (1969), 42 Ill.2d 148, 157; *People v. Peto* (1967), 38 Ill.2d 45, 51 and *People v. Cole* (1963), 29 Ill.2d 501, 505.

■■ Lastly, defendant contends that the prosecutor improperly brought to the jury's attention the fact that he used various aliases and that this allowed the jury to infer that defendant was a professional criminal. Defendant's use of an alias was brought out only as necessary to lay the foundation for the introduction into evidence of his fingerprints. Offerman testified that on December 1, 1967, he took the fingerprints of "Luis Rivera" whom Offerman identified as defendant. Subsequent references to defendant's aliases merely fortified the basis for the introduction of those fingerprints. Thus, just as in the situation when evidence of an offense, other than the one for which defendant is being tried, is admitted, the introduction of defendant's use of an alias is not grounds for reversal where it has "independent relevance." See generally, *People v. Dewey, supra,* and *People v. Peto, supra.*

The judgment of the Circuit Court is affirmed.

DRUCKER and ENGLISH, JJ., concur.