THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EARNEST DANIELS, Defendant-Appellant.

First District (4th Division)    No. 77-1746

Opinion filed June 14, 1979.

James J. Doherty, Public Defender, of Chicago (Brian L. Heise and Robert T. Badesch, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Earnest Daniels, defendant, was charged with two counts of aggravated battery in violation of section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par 12—4), and one count of attempt murder in violation of section 8—4 (Ill. Rev. Stat. 1971, ch. 38, par. 8—4). After a bench trial in the circuit court of Cook County, he was found guilty of two counts of aggravated battery and sentenced to a minimum of 1 year and a maximum of 2 years in the Illinois State Penitentiary.

The issues for review are whether defendant was accorded due process of law, and whether he was convicted of aggravated battery beyond a reasonable doubt where his in-court identification was based on a prior out-of-court identification.

Ms. Rhonda Collins testified that on November 25, 1973, at about 7:30 p.m., she went to the T & T barbeque restaurant located on 95th Street, in the city of Chicago. After she placed her order, two men entered the restaurant, one of whom she later identified as the defendant. Ms. Collins testified that defendant approached her left side and began blowing smoke from a cigarette in her face, to which she gave no response. After several minutes passed, he proceeded to blow smoke in her face from her right side. During this occurrence, Ms. Collins was given several opportunities to view defendant's face. A few minutes later, defendant hit her in the mouth. She then began to slap defendant about the face with her hands. Ms. Collins stated that defendant pushed her back, pulled a gun and shot her in the upper right chest area. Ms. Collins fell to the floor, and defendant and his companion stepped over her and ran out of the restaurant. Ms. Collins got up and went to the door; from there, she saw the two men running to the rear of a house across 95th Street.

The police arrived shortly thereafter and asked Ms. Collins to show them where she had seen the men run. She showed the police into which house her assailants had run, and the police entered the house. Ms. Collins was taken to the hospital by another police vehicle.

Shortly thereafter, the police took defendant and his companion to the emergency room where Ms. Collins was being treated. Ms. Collins stated that one of the officers said, "I think we found the boys. Which one shot you?" She replied, "That one," referring to defendant.

In a pretrial hearing, the court ruled that the hospital identification procedure was unnecessarily suggestive and would therefore be suppressed. The defendant also made a motion to suppress the in-court identification, but the court found there was sufficient evidence of an independent origin for an in-court identification.

Officer Robert Marchese testified that at about 8:15 p.m. on November 25, 1973, while patrolling in his squad car, he received a call to go to a barbeque restaurant at 225 West 95th Street. When he arrived, he found that Ms. Collins had been shot and asked whether she knew who shot her. She responded that she knew, and that the offenders went across the street into a building.

Officer Marchese further testified that Ms. Collins gave him a description of her assailants. The taller one had a medium afro hairstyle and was wearing black pants and a three-quarter length black jacket. He was about 20 years old and heavier and darker-skinned than his companion. She described the other assailant as wearing dark-colored pants and a short Eisenhower-type jacket. The officer drove Ms. Collins to the house into which she indicated they had run. The police were allowed to enter the house and found defendant and his companion. First, the police took the two men to the barbeque restaurant where the shooting occurred. After they left the restaurant, the police took the two men to the emergency room of the hospital where Ms. Collins was being treated, and she identified defendant. Officer Marchese stated that neither he nor anyone in his presence told Ms. Collins anything before she identified Daniels as her assailant.

Anthony Thomas, the owner of the T & T barbeque restaurant, testified that the shooting did not occur in his establishment, but rather it happened outside the restaurant door. He stated Ms. Collins had been in that evening and placed an order for a meal. Also, he recalled that two men had come in and then left after placing their order. Thomas stated he heard a shot, but he did not see the incident. He went outside the restaurant and saw two men running across the street. When the police brought the two men back the same evening, Thomas identified them as the men who had placed an order shortly after Ms. Collins had placed hers. Mr. Thomas testified he did not tell the police who shot Ms. Collins, but his testimony was later impeached by Officer Marchese who stated Mr. Thomas told him that defendant did the shooting.

The defendant testified on his own behalf. He stated he never left his house on the day of the shooting, and he did not commit the crime.

The trial court found defendant guilty of aggravated battery. He appeals from that judgment.

Defendant contends he was not accorded due process of law and was not proved guilty of aggravated battery beyond a reasonable doubt when the victim's in-court identification was based on a tainted pretrial identification. We disagree with defendant's position.

An alleged violation of due process of law in the conduct of a confrontation depends upon the totality of the circumstances involved.

*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972.

In *Stovall,* the police took the suspect to the hospital where the victim's wife had undergone surgery the previous day for a wound inflicted by the assailant. It was uncertain whether she would live or die and therefore imperative that she see the defendant. The court stated that under such circumstances the usual police lineup was not feasible and they affirmed the court of appeals which held the identification procedure used was necessary.

■■ In the instant case, the police took defendant and his companion to the hospital where Ms. Collins was receiving treatment. Ms. Collins testified the police stated they thought they had the boys and asked which one had shot her. She pointed to the defendant. The trial court held that the hospital identification should be suppressed because it was unnecessarily suggestive, but there was sufficient evidence of an independent origin to allow the in-court identification. We agree with the trial court's ruling.

The Illinois courts have held that the existence of an independent origin of identification will validate an in-court identification, even if a previous identification may have been impermissibly suggestive. *People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409, 412.

■■ When a court is making the determination whether an identification by a witness was free and independent from a suggestive influence, the witness' opportunity to observe his assailants or a lack of opportunity is extremely important. The test to be applied in such instances is whether the witness was close enough for a sufficient length of time under adequate conditions to see and therefore had the opportunity to observe, did so, and could later make the appropriate identification. *People v. Ragan* (1975), 33 Ill. App. 3d 151, 153, 337 N.E.2d 432, 434.

■■ In the instant case, those circumstances exist. It is clear that the in-court identification of defendant was not based on the short meeting in the hospital, but rather her observation of him at the barbeque restaurant. The area was small where the confrontation took place. Ms. Collins had placed her order for a dinner when defendant and his companion came in. The defendant blew smoke in her face for a period of 10 minutes, at which time she had various opportunities to observe him. The lighting was sufficient to provide an adequate view. After that, defendant hit Ms. Collins in the face and she attempted to defend herself, during which time she could look at Daniels.

In *People v. Dortch* (1978), 64 Ill. App. 3d 894, 899, 381 N.E.2d 1193, 1197, the court held that where a witness observed the defendant for a period of 5 minutes, in proximity, in a well-lighted room, the in-court identification has a sufficient independent basis.

Ms. Collins was able to view the defendant for a period of at least 10 minutes in a well-lighted area, thus affording her the opportunity to see and observe the defendant. It appears from the facts in this case that the in-court identification came from the ability of the victim to view defendant at the scene of the crime and not at the hospital.

Mr. Thomas, the owner of the T & T barbeque restaurant stated he had seen the men in his establishment, but had not seen the shooting, although his testimony was later impeached by a police officer.

■■ Since it is not clear from the facts whether Ms. Collins was the only identification witness, and the identification is in question here, it is important to point out that the testimony of one such witness is sufficient to convict even though the defendant contradicts such testimony. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) It is sufficient as long as the witness is credible and was able to view the accused under circumstances which would permit a positive identification.

All of the necessary elements are present in the instant case which provided Ms. Collins with an independent basis for identification of defendant. The trial court properly refused to suppress the in-court identification testimony.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.