THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FELIPE FRESCO, Defendant-Appellant.

Second District No. 79-539

Opinion filed August 13, 1980.

James Canfield, of Canfield Law Offices, of Rockford, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Felipe Fresco, was charged with the offenses of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) and home invasion (Ill.

Rev. Stat. 1979, ch. 38, par. 12—11). Following a jury trial in the Circuit Court of Winnebago County, he was found guilty of both charges. Judgment was entered on the armed robbery charge, and the defendant was sentenced to a term of eight years in the custody of the Department of Corrections. Defendant appeals, contending that the introduction of evidence of another crime deprived him of a fair trial.

On January 31, 1979, two men entered the Rockford home of Lucille Thompson and at gunpoint robbed the occupants and their guests of cash and other valuables. Both men had their faces covered during the robbery, but witnesses told police that one had a Spanish accent and that the other sounded like a black person. Shortly after the robbery, Rockford police officer Lester Anderson noticed an automobile parked on Oakley Street, about three blocks from the Thompson home. The car contained two men—one of Spanish descent and one black. When the officer's car approached the suspects' car, the Spanish male jumped out and ran. The officer later identified this man as Felipe Fresco. Some 10 minutes later, police officers arrested the defendant on a nearby street with approximately $150 in cash on his person.

David MacMurchy testified at trial that he had taken the defendant's fingerprints in April of 1972. Rockford police officer Fred Erickson then testified that this earlier print was identical to a print taken by Officer Anderson from the suspects' car. Officer Esteban Martinez also testified concerning the defendant's fingerprints. Over objection he was allowed to inform the jury that he arrested the defendant in April of 1972. After this testimony, Officer Martinez stated that Eulogio Fresco, who was said to be the defendant's brother, had also been arrested in April of 1972. Eulogio Fresco was then identified by the officer as the man in the courtroom who was in a prison jumpsuit. Over defense objection, Eulogio Fresco was called to testify that on January 31, 1979, he was living at 212 Oakley, Rockford. The trial court later admonished the jury that testimony concerning the 1972 arrest was not to be used in deciding whether the defendant was guilty of the present charges. However, no formal instruction to that effect was offered or given.

Ester Luna, the defendant's girlfriend, testified for the defense. She stated that on January 29, 1979, the defendant had received a check for $154 from a Cuban refugee organization. She also testified that she knew Eulogio Fresco and he was Felipe Fresco's cousin. The defendant did not testify.

The case law is in conflict with respect to the use of fingerprint evidence indicating prior crimes. (Compare *People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297, with *People v. Pantoja* (1972), 4 Ill. App. 3d 286, 280 N.E.2d 720.) The most recent fingerprint case focuses on the prejudicial effect of the references to prior crimes. *People· v. Bartels*

(1975), 30 Ill. App. 3d 551, 333 N.E.2d 457 (no prejudice from reference to fingerprint card from sheriff's office in addition to fingerprints taken at the city police station at time of arrest).

In the instant case, there were three different witnesses who gave fingerprint testimony. Officer MacMurchy testified, without objection, that he had taken the defendant's fingerprints in 1972 in his capacity as a police officer. Officer Erickson testified, again without objection, that the fingerprints on the fingerprint card referred to by Officer MacMurchy matched the prints taken from the automobile found near the crime scene. Officer Erickson did not refer to the date on which the prints were initially taken. The first direct mention of a prior arrest came in testimony from Officer Martinez that he was involved in a 1972 arrest of the defendant. Defense counsel immediately objected, and an in-chambers discussion followed. It was then revealed that the defendant had not been fingerprinted after his current arrest. Defense counsel refused to stipulate to the accuracy of the fingerprints on file, and the trial court overruled defense counsel's objection. Officer Martinez was again allowed to testify as to the 1972 arrest even to the extent of identifying the 1972 charge as "obstructing." The dated fingerprint card itself was not sent to the jury.

■■ The State first argues waiver on the basis of the failure to make a timely objection. This argument lacks merit as defense counsel objected the first time the word "arrest" was elicited. The State also asserts waiver based on defense counsel's failure to stipulate as to the authenticity of the defendant's fingerprints. However, in light of the State's burden of proof, we conclude that the defendant's reluctance to stipulate as to the accuracy of part of the State's case cannot be said to operate as a waiver of trial error.

■■ In our view, the evidence in question was prejudicial to the defendant. Unlike *Bartels*, in which reference was merely made to prints on file with a police agency, the instant case involves testimony concerning the details of the prior arrest. Thus this case goes beyond a mere "inference" of past criminality that was found harmless in *Bartels*. Indeed, the State concedes that the better practice would have been to take a new fingerprint of the defendant.

The defendant also contends that he was prejudiced by the presence of his cousin in open court in prison clothing where he was identified as the defendant's brother and the person arrested with him in 1972. This contention is not offered as an independent source of error, but as a compounding of the error of exposing the prior arrest. The record shows that as part of his testimony concerning the defendant's 1972 arrest, Officer Martinez stated that Eulogio Fresco was also arrested at that time. The officer then identified Eulogio Fresco, who had just been brought into the courtroom wearing the orange jumpsuit used by inmates of the

Winnebago County Jail. Defense counsel objected. Later, when the prosecutor attempted to call Eulogio Fresco to the stand, a sidebar took place. The State explained that it wanted this witness to give his address, which is on the same block in which the suspects' car was found, in an attempt to buttress Officer Anderson's identification. Eulogio Fresco was then called to the stand and asked only his name and address.

The testimony of Eulogio Fresco was marginally relevant at best. Officer Anderson had positively identified the defendant, the defendant's fingerprints were found in the suspects' car, and the defendant was apprehended near the scene of the crime. On the other hand, the prejudice from the use of this witness is readily apparent. Not only was the 1972 arrest again mentioned, but the jury could well have been left with the impression that the defendant's entire family were members of the criminal milieu. We note also that Eulogio Fresco was not listed in pretrial discovery as a potential State witness.

The State argues that in light of the evidence of the defendant's guilt, any error was harmless. We conclude that given the prejudicial nature of other crimes evidence, we cannot say references to prior criminal misconduct did not affect the jury's verdict. *People v. Goodwin* (1979), 69 Ill. App. 3d 347, 387 N.E.2d 433.

Accordingly, the judgment of the Circuit Court of Winnebago County is reversed and this case is remanded for a new trial.

Reversed and remanded.

WOODWARD and UNVERZAGT, JJ., concur.