THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOEL NOVAK, Defendant-Appellant.

First District (3rd Division) No. 78-338

Opinion filed March 25, 1981.

James J. Doherty, Public Defender, of Chicago (Marcia L. Cohen, Mary T. Woodward, and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

In a jury trial, defendant, Joel Novak, was found guilty of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) and armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). He was sentenced to a prison term of 60 to 180 years. On appeal, defendant contends that (1) he was not proved guilty of murder beyond a reasonable doubt; (2) he was not proved guilty of armed robbery beyond a reasonable doubt; (3) he was denied a fair trial because of reference to a separate and distinct charge of robbery for which he had been arrested; (4) his right to a fair and impartial jury was abridged because one of the jurors was the victim of a robbery during the course of the trial; and (5) his sentence is excessive. We affirm.

At approximately 1:30 a.m. on February 2, 1977, Betty Betterton and her daughter, Betty Monteil, heard garbage cans rolling and the sound of glass breaking in the alley behind their third floor rear apartment located

at 2329 S. Sawyer in Chicago, Illinois. Looking out the window, they saw three or four men engaged in a scuffle. Monteil heard one voice say, "Hurry up and shoot the guy." She and her mother then saw a man turn and fire in the direction of a dog that had been barking, after which he turned the other way and shot toward the ground. The witnesses were unable to see anything on the ground because their view was obstructed by the bannister and floor of the back porch. Two of the men then grabbed a jacket and went through the pockets. They threw the jacket in a garbage can as they ran away. Neither Betterton nor her daughter telephoned the police.

Later that morning, around 9 a.m., several police officers responded to a call that there was a dead man in the backyard of 2327 S. Sawyer. The victim was found in a bloodied condition due to multiple wounds. His shirt was entwined around one arm. A search of the area revealed a broken pool cue, shattered glass from two beer bottles, buttons the same color as the victim's shirt and one of the victim's shoes. There were blood drag marks leading from a pool of blood towards the spot where the body was discovered. A live bullet was found, as was a coat on a garbage can. No money or identification papers were found on the victim.

A pathological examination of the corpse revealed cutting wounds caused by a sharp object, scraping-type abrasions and three gunshot wounds. A cigarette had been inspired into the bronchus. According to the results of a blood test, the victim was intoxicated at the time of his death.

Defendant was arrested at approximately 6 a.m. on February 2 while allegedly committing a robbery. He was identified by Betterton and Monteil at a lineup held later that day.

Defendant did not testify, but George Roman, who was also charged in this case, testified on defendant's behalf. On February 1, 1975, he and defendant were in a tavern adjacent to the site where the body was found. Around 9:15 p.m., defendant and another man were involved in a fight. They were told to leave, and they went outside for two or three minutes. They then returned to the tavern, where defendant remained until approximately 3 a.m.

Defendant's first contention is that he was not proved guilty of murder beyond a reasonable doubt. Specifically, he argues that the testimony of the two occurrence witnesses was vague and contradictory, that the lineup in which he participated was suggestive, and that the scientific evidence regarding hair and blood samples was merely speculative. Therefore, defendant concludes, there was insufficient evidence on which to base his conviction. We disagree.

The testimony of the eyewitnesses regarding the identification of defendant and his participation in the homicide was clear and convincing.

Monteil stated that upon looking out the window, she saw three or four men engaged in a fight. She heard one of the men say, "Hurry up and shoot the guy." She saw a man turn and shoot in the direction of a barking dog; he then turned and shot toward the ground. The witness stated that she saw part of the gunman's face, and that she was positive that the man who fired the gun was defendant.

Betterton substantially corroborated her daughter's testimony. She testified that she could see everything clearly and was able to view two of the men as they stood near a light pole. She was able to recognize defendant because she had seen him in a local tavern once or twice before. Although she did not hear the "hurry up and shoot" statement, she was able to hear one of the men say, "Let's get out of here." When asked why she did not call the police at the time of the incident, she explained that she feared for her children's safety. Both Betterton and Monteil identified defendant at the lineup held on the day of the murder and also identified him at trial.

■■ The credibility of witnesses, the weight to be accorded their testimony and the inferences to be drawn therefrom are determinations to be made by the jury. Any conflicts or discrepancies in the testimony do not destroy credibility, but only affect the weight to be given the testimony. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 281, 393 N.E.2d 1098, 1114.) Here, any inconsistencies between the testimony of the two eyewitnesses involved only minor points. Moreover, Betterton and Monteil had ample opportunity to view defendant in a lighted area. The jury obviously found Betterton and her daughter to be credible witnesses. The only testimony offered by defendant to show that he was in a tavern at the time of the offense came from a man who was also accused of the crime. A jury is not required to believe witnesses presented by the defense, especially where there is a possibility of bias. (*People v. Palmer* (1979), 76 Ill. App. 3d 1014, 1024, 395 N.E.2d 713, 720.) Since a conviction may be supported by the credible testimony of even a single eyewitness if the eyewitness viewed the accused under circumstances which would permit a positive identification (*People v. Horton* (1976), 43 Ill. App. 3d 150, 155, 356 N.E.2d 1044, 1047), the testimony supplied by Betterton and Monteil provides a sufficient basis on which to sustain the guilty verdict. Thus, we conclude that the evidence is sufficient to establish that defendant was proved guilty of murder beyond a reasonable doubt.

■■ We next consider defendant's argument that the lineup in which he was identified by the two eyewitnesses was suggestive. Both Betterton and Monteil made an in-court identification of defendant, and the evidence shows that they were able to view defendant under circumstances that were conducive to making a positive identification. Since the in-court identifications were therefore validated by an origin independent

of the lineup, the identifications were not rendered unreliable even if the lineup procedure was impermissibly suggestive. See *People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409, 412-13; *People v. Daniels* (1979), 73 Ill. App. 3d 394, 397-98, 392 N.E.2d 95, 98.

■■ Finally, defendant's argument that the scientific evidence regarding hair and blood samples was too speculative to support the verdict is without merit. The weight to be accorded this evidence was up to the jury. (*People v. Smith* (1974), 19 Ill. App. 3d 138, 143, 310 N.E.2d 818, 822.) According to the testimony of a microanalyst, blood found on defendant's shoes and pants was type A, as was the victim's blood, and hairs found on defendant's shoes and pants were morphologically similar to the victim's hair. This evidence is consistent with the identifications made by the eyewitnesses, and it supports the guilty verdict. See *Smith*, 19 Ill. App. 3d 138, 143, 310 N.E.2d 818, 822.

Defendant next contends that he was not proved guilty of armed robbery beyond a reasonable doubt because there was no proof that any property was taken from the victim. We disagree.

According to Betterton and Monteil, defendant and another man were taking things from the pockets of a jacket as they ran away. The witnesses observed one of the men throw the jacket in a garbage can as he left, and Monteil identified this man as defendant. The victim's roommate testified that he recognized the jacket as one that belonged to the victim. This witness also stated that the victim carried identification papers and money in his pocket, and that the victim had received a paycheck on the day preceding his death. No papers or money were found on the victim.

■■ Robbery may be proved by circumstantial evidence. (*People v. Wilson* (1976), 37 Ill. App. 3d 560, 564, 346 N.E.2d 161, 164.) Here, the witnesses saw defendant take "something" from the pockets of the victim's jacket, and then dispose of the jacket in a garbage can. While no one testified that the victim was carrying money at the time in question, the jury could have reasonably inferred that he had some money with him since he had just received his paycheck. (See *Wilson*, 37 Ill. App. 3d 560, 564, 346 N.E.2d 161, 164.) A jury is not required to search out potential explanations compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Morgan* (1976), 44 Ill. App. 3d 459, 466, 358 N.E.2d 280, 286.) The sufficiency and weight of this evidence were matters to be determined by the jury, and we cannot say that the evidence was so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt of the crime of armed robbery. See *People v. Smith* (1979), 69 Ill. App. 3d 704, 711-12, 388 N.E.2d 184, 189.

Defendant's next argument is that he was denied a fair trial by reference to a separate and distinct charge of robbery. The court denied defendant's motion *in limine* to prevent the jury from hearing evidence of

defendant's participation in an alleged crime which led to defendant's arrest four hours after the events in the instant case. We conclude that the motion *in limine* was properly denied.

At the hearing on the motion *in limine*, the State informed the court that the following testimony would emerge at trial. A Chicago police officer would testify that around 5 a.m. on February 2, 1975, he and his partner were informed that a man had been dragged into a nearby alley. Upon investigation, the officer observed defendant going through the pockets of a man lying on the ground. Defendant began to run when he saw the police officers and threw something away as he ran. Defendant was captured and placed under arrest. No weapons were found. Noticing that defendant had blood stains on the bottom of his pants, the officer had defendant remove his pants at the police station, where they were inventoried. Another police officer would then testify that he noticed the blood-spattered pants at the station before leaving on patrol. He subsequently received a radio message that there was a dead body in the yard at 2327 S. Sawyer. Performing an inspection of that site, the officer noticed a large pool of blood which appeared to have footprints in it. Recalling the blood-stained pants which he had observed earlier, he returned to the station and asked to see the owner of the blood-stained clothing. The officer was directed to the defendant's cell. Observing what appeared to be blood on defendant's shoes, the officer took the shoes and had them inventoried.

■■ Evidence of a defendant's involvement in crimes other than the one for which he is on trial is generally inadmissible. Such evidence is admissible, however, if it is relevant for purposes other than showing a defendant's propensity to engage in criminal activity. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200, 1204; *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93.) In denying the motion *in limine*, the court stated that the testimony regarding the circumstances surrounding defendant's arrest would be permitted for the limited purpose of laying a foundation for admitting the clothing into evidence. The testimony was properly introduced for this limited purpose. See *People v. Pantoja* (1972), 4 Ill. App. 3d 286, 290, 280 N.E.2d 720, 722.

Moreover, the court reinforced the restrictions which it had placed on the use of the testimony. Before the police officers' testimony was presented at trial, the court carefully explained to the jury the limited purpose for which it could consider the testimony. This admonishment was repeated as the testimony progressed. The court also sustained defendant's objections whenever the State's inquiries went beyond eliciting the information necessary for establishing the foundation for the evidence. Under these circumstances, we cannot say that the denial of the motion *in limine* was error.

Defendant next argues that his constitutional right to a fair and impartial jury was abridged when the court denied his motion for a mistrial following the discovery that one of the jurors had been robbed during the course of the trial, since one of the charges against defendant was armed robbery.

The juror involved in the robbery testified outside the presence of the other jurors to the following incident. While taking the "L" home after court had recessed for the day, he was verbally harassed by a man and was coerced into giving the man his gloves. The man also attempted to take the juror's watch, but the juror moved to another car, and the man did not follow. Two policemen were notified of this episode, and they accompanied the juror back into the other car. The juror identified the man who had taken his gloves. The police searched the man and retrieved the juror's gloves, which were returned to the juror. The man was arrested, and the juror signed a complaint.

The robbery occurred on a Friday, and the juror informed the court of the incident the following Monday. In response to the judge's question as to whether anything about the experience would affect his ability to decide the case, the juror replied, "I don't believe so, no, sir." When asked the same question by the defense, the juror replied, "No." Since the juror testified that he believed the other jurors were all aware of what had transpired, the judge called the other members of the jury into the courtroom where he asked them as a group whether they would be affected by the juror's experience in any way which would interfere with their ability to be fair and impartial. The judge asked for any juror who thought he might be influenced to raise his hand. There was no response. The judge then asked defense counsel if he had any further questions, and the attorney said no. After the jury was excused, defendant's counsel moved for a mistrial. The motion was denied. We disagree with defendant's contention that the procedure followed by the trial court was insufficient to protect defendant's right to a fair and impartial jury.

Defendant argues that the court should have employed a two-step procedure for ascertaining whether or not the jury was impartial: (1) determine in an individual voir dire whether the juror was exposed to the information and (2) if such exposure had occurred, then ascertain the impact on the juror's ability to be impartial. While this process may be appropriate under other circumstances, we do not believe that its use was required under the facts of this case.

■■ The juror involved in the incident was questioned outside the presence of the other jurors. The circumstances surrounding his robbery were clearly distinct from and wholly unrelated to the armed robbery charge involved here. Defendant suggests that the incident may have angered the juror, prejudicing him against defendant. However, defend-

ant was given the opportunity to question the juror, and his testimony does not support this conjecture. The juror stated that the incident would not affect his ability to decide the case. Moreover, the juror retrieved his property shortly after the robbery and saw the offender placed under arrest. Under the circumstances, we will not presume that the incident affected the juror's impartiality. The burden of showing that a juror is not impartial is on the party challenging the juror. Ultimately, the determination of whether or not a juror should be disqualified rests in the sound discretion of the trial court, and its determination will not be set aside unless it is against the manifest weight of the evidence. (*Cf. People v. Cole* (1973), 54 Ill. 2d 401, 413-14, 298 N.E.2d 705, 712.) We conclude that the trial court did not abuse its discretion in determining that there was no showing of prejudice in regard to this individual juror.

■■ As for the remaining jurors, the judge was very circumspect in his inquiry as to their state of mind. The judge merely informed the jury that one of its members had "experienced an incident on an 'L' train." When the jurors were asked to raise their hands if that experience would in any way affect their ability to be fair and impartial, there was no response. Counsel was then given the opportunity to ask questions. Rather than asking questions, however, the defense moved for a mistrial. The court acted correctly in denying this motion.

Since the juror involved in the robbery testified that he believed all of the jurors heard about his experience, there was no need for the court to interview the jurors individually to prevent knowledge of the incident from spreading. The question posed by the judge to the jury was not one designed to elicit responses from the jurors that they were not prejudiced. (See *People v. Cain* (1967), 36 Ill. 2d 589, 596, 224 N.E.2d 786, 790.) Under the facts of this case, the trial court's method of dealing with an unfortunate and untimely event was sufficient to protect defendant's right to a fair and impartial jury. See *People v. Camacho* (1979), 71 Ill. App. 3d 943, 952-53, 389 N.E.2d 1213, 1219.

■■ Defendant's final argument is that his sentence of 60 to 180 years should be reduced because it is excessive. We disagree. The Illinois Constitution requires that penalties be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, §11.) The court, however, is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. (*People v. Hayes* (1979), 70 Ill. App. 3d 811, 831, 388 N.E.2d 818, 832-33.) Absent a showing that the trial court abused its discretion in imposing a sentence, the sentence may not be altered upon review. (*People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545.) The propriety of a sentence must be determined according to the individual circumstances of each case. *People v. Perruquet* (1977), 68

Ill. 2d 149, 153-54, 368 N.E.2d 882, 884; see *People v. Soto* (1975), 35 Ill. App. 3d 166, 171, 341 N.E.2d 107, 111.

■■ Here, the court considered defendant's potential for rehabilitation and found it to be remote. The court noted that defendant, at the time of his arrest, was on parole as the result of a conviction for attempt rape and robbery, both of which are crimes that involve elements of violence. The court stated that it had considered the circumstances surrounding the offense as well as the character of defendant. The court concluded that defendant's actions exhibited a complete disregard for life. The court characterized the murder as "a brutalizing attack" and a "premeditated attack on a weak victim." The court stated that the sentence involved the protection of society. Under the circumstances, we conclude that the sentence imposed was not excessive. See *People v. Hayes* (1979), 70 Ill. App. 3d 811, 832, 388 N.E.2d 818, 832-33; *People v. Lipscomb* (1974), 19 Ill. App. 3d 114, 123, 311 N.E.2d 257, 264.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.