No. 3--06--0268
_____
Filed December 4, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--176 |
| CHRIST E. WALKER, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the opinion of the court:
_____


A jury found the defendant, Christ E. Walker, guilty of: (1) first degree murder (720 ILCS 5/9--1(a)(1) (West 2004)); (2) attempted murder (720 ILCS 5/8--4(a), 9--1(a)(1) (West 2004)); (3) aggravated discharge of a firearm (720 ILCS 5/24--1.2(a)(2) (West 2004)); and (4) aggravated unlawful use of a weapon (720 ILCS 5/24--1.6(a)(1) (West 2004)).  The trial court sentenced the defendant to consecutive prison terms of 49 years for murder and 20 years for attempted murder.  Additionally, the court imposed prison terms of 10 years for the discharge offense and 5 years for the unlawful use offense, to be served concurrently with the attempted murder sentence.

On appeal, the defendant initially argued that he was entitled to a new trial because of: (1) improper statements by the prosecutor during closing arguments; and (2) jury prejudice. However, on June 27, 2008, the defendant asked this court's permission to withdraw his first issue. We hereby grant the defendant's request to withdraw that question. We affirm.

BACKGROUND

As a preliminary matter, we note that a portion of the written sentencing order, issued by the trial court on April 4, 2006, does not comport with the court's oral pronouncement at the sentencing hearing that same day. The written order incorrectly indicates that the sentences for both the discharge offense and the unlawful use offense are to be served consecutively to the murder sentence. The court orally stated that the sentences for these two offenses were to be served concurrently with the sentence for attempted murder.

When the oral pronouncement of a trial court conflicts with its written order, the oral pronouncement controls. People v. Jones, 376 Ill. App. 3d 372, 876 N.E.2d 15 (2007). In this case, we have indicated what the trial court orally stated the sentence to be, which prevails over the written sentencing order.

The State charged the defendant with having committed first degree murder on March 27, 2005, by shooting Dwayne Cooks in the head, causing his death. He was charged with the attempted

2

murder of Eddie Perez, who was a responding police officer, by shooting at Perez. The State alleged that the defendant committed aggravated discharge of a firearm by knowingly discharging a firearm in the direction of another person or persons. He also was charged with aggravated unlawful use of a weapon by carrying a loaded, uncased, immediately available firearm in a vehicle. At trial, the State presented testimony and physical evidence concerning these allegations.

After a recess during the State's case in chief, the court met with the parties and juror Jennifer Smith in chambers. The court said, "Now, Miss Smith, the reason I have convened everybody here is that the bailiff indicated to me *** that you wanted to talk to me. What is it you would like to communicate?" Smith said the following:

"I just had a concern on my safety and the safety of the other jurors when we exited the building because we have people that are sitting in the courtroom on the defense side.

When I was leaving yesterday[,] I was behind four individuals that were in the courtroom. When I was walking behind them[,] I heard one of them say something like shooting up the courtroom, and then another individual said I object. So hearing that--and I can't tell you who said what because their mouths

3

weren't even directed at me because I was behind them. When I heard them say that they--and they were walking down the back steps, I took off in to the grass not running but just walking quickly to my car.

When I got into my car, which it was parked right behind the building to the left, you have to go this way in the parking lot, then turn around and come back up this way.  By the time I got to this part to leave the parking lot[,] the four individuals were right there, and I felt that they purposely walked slow and I had to stop the car before I could go past them, each one of them made eye contact with me.  I don't--I felt intimidated.  I don't--I want to be fair.  I don't know if that was their intention but that's how I felt.

So[,] I had mentioned that to the other jurors if they felt intimidated when they leave."

Smith stated that some other jurors, "mostly the women[,]" said that they also felt intimidated when leaving the courthouse. In discussions among the jurors, they agreed to communicate the situation to the bailiff, and to ask if they could obtain escorts to their cars.

The court reassured Smith that it would take measures to eliminate the possibility of such contact between jurors and the public in the future.  The court then asked Smith whether her

4

experience would affect her "ability to be a fair and impartial juror in this case[.]"  Smith said, "I *** believe I can be fair and impartial, absolutely."  When the court asked Smith if she would "hold [her experience] against one side or the other[,]" Smith replied, "Not at all."

After further discussions with Smith, the court released her to the jury room.  The court and the parties then agreed that all of the jurors should be questioned because Smith had related her experience to them.

The court and the parties then questioned the other 11 jurors concerning Smith's discussions with them.  Four of these jurors noted that Smith identified the men who made the remarks as having sat on the same side of the courtroom as the defendant. When one of these four jurors was asked if the incident would influence her ability to carry out her duties as a juror, she said, "I don't think so."  When asked if she could be objective, fair, and impartial, this juror answered, "I believe so."

Another of these four jurors stated that because the men were sitting on the defendant's side of the courtroom, she assumed they were supporters of the defendant.  When this juror was asked whether the experience would influence her ability to decide the case based solely on the evidence, she replied, "I would say no."  When she was asked if she could focus on the

evidence rather than the spectators' gallery, she said, "I would hope that I can."

One juror stated that all he knew was that Smith had said that "[s]omebody was walking behind her and made some comments." This juror indicated that he was not paying attention when Smith described the comments. Neither the court nor the parties asked this juror whether Smith's discussions would affect his ability to decide the case fairly and impartially. The remaining jurors, who were asked that question, stated that Smith's experience would not affect their abilities to decide the case fairly and impartially.

After the court and the parties concluded their questioning of the jurors, the defendant's counsel moved for a mistrial. The attorney reasoned that because several of the jurors associated the men, who spoke of committing acts of violence in the courthouse, with the defendant, and because the case concerned allegations that the defendant had committed acts of violence, the jurors would tend to believe that the defendant had committed the violent crimes charged by the State. The court denied the motion for mistrial.

At the conclusion of the trial, the jury found the defendant guilty of the offenses. The defendant filed a motion for a new trial in which he again argued that the jury was prejudiced as a result of Smith's discussions concerning the statements made by

6

men who had been sitting on the defendant's side of the courtroom. The court denied the motion for a new trial, and imposed sentence. The defendant appealed.

ANALYSIS

The defendant contends that the trial court erred by denying his motion for a mistrial. Specifically, he submits that he is entitled to a new trial because the jury was prejudiced as a result of the experiences Smith described to the other jurors.

A criminal defendant is constitutionally entitled to a fair trial by an impartial jury, as a matter of due process. Turner v. State of Louisiana, 379 U.S. 466, 13 L. Ed. 2d 424, 85 S. Ct. 546 (1965). We believe that the United States Supreme Court has elucidated this due process right well by saying,

> "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. *** [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217, 71 L. Ed. 2d 78, 86, 102 S. Ct. 940, 946 (1982).

7

To warrant reversal of a trial court's denial of a motion for mistrial, it must reasonably appear that some of the jurors have been influenced or prejudiced such that they could not be fair and impartial. People v. Malmenato, 14 Ill. 2d 52, 150 N.E.2d 806 (1958); People v. Staten, 143 Ill. App. 3d 1039, 493 N.E.2d 1157 (1986). In making such a determination, a reviewing court should consider all of the facts and circumstances concerning the jury's exposure to the alleged prejudicial event. People v. Hryciuk, 5 Ill. 2d 176, 125 N.E.2d 61 (1954); Staten, 143 Ill. App. 3d 1039, 493 N.E.2d 1157. The jurors' oral assurances that they could disregard the event and decide the case solely on the evidence are to be given important but not conclusive consideration. Staten, 143 Ill. App. 3d 1039, 493 N.E.2d 1157. We review a trial court's denial of a motion for mistrial for abuse of discretion. People v. Bishop, 218 Ill. 2d 232, 843 N.E.2d 365 (2006).

In Staten, the court ruled that the defendant was not entitled to a new trial where jurors heard a youth say that he would kill all of the jurors if he had a gun. Staten, 143 Ill. App. 3d 1039, 493 N.E.2d 1157. The court in People v. Hunley, 189 Ill. App. 3d 24, 545 N.E.2d 188 (1989), held that the defendant was not prejudiced by the burglary of deliberating jurors. In People v. Robinson, 68 Ill. App. 3d 747, 386 N.E.2d 559 (1979), the court ruled that the defendant was not entitled

8

to a new trial when a juror was robbed during the trial. The court in People v. Novak, 94 Ill. App. 3d 1024, 419 N.E.2d 393 (1981), held that the defendant was not prejudiced when a juror's purse was stolen while she was sequestered. In each of these cases, the trial court questioned all of the jurors about the incident, and none of the jurors stated that their abilities to decide the case fairly and impartially had been influenced.

In this case, we find that the facts and circumstances concerning the jury's exposure to Smith's experience did not prejudice the defendant's right to a fair and impartial jury. Those jurors, who were asked, stated that they could decide the matter fairly and impartially. The only juror who was not asked indicated that he was not paying attention to Smith's comments. Moreover, the incident that Smith described was substantially similar to the incidents described in Staten, Hunley, Robinson, and Novak. Therefore, taking into consideration all of the facts and circumstances concerning the jury's exposure to the alleged prejudicial event, we hold that the trial court did not abuse its discretion by denying the defendant's motion for a new trial.

Additionally, we find that statements from two jurors, such as "I don't think so[,]" "I believe so[,]" "I would say no[,]" and "I would hope that I can[,]" did not represent uncertainty or equivocation by these jurors. To the contrary, we believe that

9

these statements were merely the jurors' colloquial manner of answering the court's questions.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kankakee County circuit court.

Affirmed.

O'BRIEN, J., concurring.

PRESIDING JUSTICE McDADE, dissenting:

The majority has affirmed the multiple convictions of defendant, Christ Walker, rejecting his challenge to the denial of his motion for a mistrial. I disagree with the legal analysis regarding the proposed mistrial and therefore dissent.

The basis for the motion for mistrial was an incident involving four individuals who had been attending the trial and one of the jurors, Jennifer Smith. Ms. Smith reported to the trial judge that she had walked out of the courthouse the preceding evening behind four people who had been sitting on "the defense side" of the courtroom. She heard one of them say "something like shooting up the courtroom" and then another individual say "I object." Upon hearing that, she "took off into the grass" and walked quickly to her car in the parking lot. She saw the same four individuals in the lot and "felt they purposely walked slow" requiring her to "stop the car before [she] could go past them." Each one of the four "made eye contact" with her. She "felt intimidated" even though she did not "know if that was their intention."

Upon returning to court the next morning, Ms. Smith, rather than reporting the incident to the bailiff or the judge, told the other jurors about it and asked if they, too, "felt intimidated when they leave." Some other jurors, "mostly" the women, said they also felt intimidated when leaving

10

the courthouse. It was only after this that they agreed to discuss the matter with the bailiff to see about getting escorts to their cars.

Before going on to the proceedings with the trial judge, I would like to make a couple of observations. First, it is clear from her own words that Ms. Smith connected the four individuals with the defendant in her own mind. Second, she was walking behind the persons and gives no indication of whether they even knew that she was there. Third, she had no idea of what they were talking about or in what context, having only heard one say "something like" shooting up the courtroom and another say "I object." Fourth, despite this, she interpreted the comments as a threat and felt sufficiently intimidated by them to move onto the grass and hustle to her car. Fifth, she believed, apparently because she had to stop for them to cross, that they had deliberately walked slowly for this purpose. Finally, the fact that these pedestrians crossing in front of her car made eye contact with her added to her sense of intimidation. Her interpretation of this incident and her connection of it to the defendant seems much more telling to me than her response that she "believe[d]" she could when asked whether she could still, after her experience, "be a fair and impartial juror in this case [.]"

After sharing her take on this incident with her fellow jurors and assuring herself that at least some of them shared her fear, she finally, at the instance of the bailiff, reported the incident to the judge. After talking with Ms. Smith, the judge, with the agreement of the parties, spoke with the other jurors. Four of the jurors disclosed that Smith had identified the four men as having sat on the defendant's side of the courtroom. One expressed the assumption that the men were associated with the defendant. Thus, five of the twelve jurors connected, to some degree, the four individuals with the defendant.

11

This is important because, although the majority has chosen to omit it from their analysis, whether bad acts or bad actors are connected with the defendant in the minds of the jurors is a relevant and important consideration in assessing the potential for prejudice. *People v. Staten,* 143 Ill. App. 3d 1039, 493 N.E.2d 1157 (1986). In *Staten*, to which the majority has frequently cited, in finding no prejudice, the court emphasized that "each juror had stated unequivocally that *they did not associate the incident in any way with the defendant* and that they could remain fair and impartial." (Emphasis added.) *Staten*, 143 Ill. App. 3d at 1057, 493 N.E.2d at ____.

Although the majority asserts that "the incident that Smith described was substantially similar to the incidents described in <u>Staten</u>, <u>Hunley</u>, <u>Robinson</u>, and <u>Novak</u>, this is, in fact, not true. These cases all differ significantly from the instant case in two ways. First, each case involved a *real* threat or occurrence rather than a figment, and, second, there was no connection to the defendant in any of them.

Chronologically, the first is *People v. Robinson*, 68 Ill. App. 3d 747, 386 N.E.2d 559 (1979). In *Robinson*, which was a case alleging first degree murder, the purse of one of the jurors was stolen while she was sequestered in a motel. Thus, it would appear that this theft occurred in circumstances that excluded the possibility that defendant was the thief. Certainly there was no suggestion that the jury connected Robinson in any way with the theft. Nevertheless, the trial judge questioned each juror in open court to assess possible prejudice. In affirming the trial court's denial of defendant's motion for a mistrial, the appellate court held: "Considering both the nature of the alleged prejudicial incident itself and the statements of the jurors to the trial court, we believe the trial court properly denied defendants' motion for a mistrial." *Robinson,* 68 Ill. App. 3d at 754, 386 N.E.2d at 564.

12

In *People v. Novak*, 94 Ill. App. 3d 1024, 419 N.E.2d 393 (19981), defendant was convicted of murder and armed robbery. Defendant appealed, among other things, the denial of his motion seeking a mistrial because one of the jurors had been the victim of a robbery on an "L" train while going home at the end of a trial day. In his appeal, the defendant challenged the procedure that the trial court had used in discussing any potential impact on the victim and the other jurors. The appellate court concluded that the trial court's finding that there was no showing of prejudice and denying a mistrial was not an abuse of discretion. In arriving at that conclusion, the court noted:

> "The juror involved in the incident was questioned outside the presence of the other jurors. *The circumstances surrounding his robbery were clearly distinct from and wholly unrelated to the armed robbery charge involved here.* * * * The juror stated that the incident would not affect his ability to decide the case. Moreover, the juror retrieved his property shortly after the robbery and saw the offender placed under arrest. Under the circumstances, we will not presume that the incident affected the juror's impartiality.
>
> * * *
>
> As for the remaining jurors, the judge was very circumspect in his inquiry as to their state of mind. The judge merely informed the jury that one of its members had 'experienced an incident on an "L" train.' When the jurors were asked to raise their hands if that experience would in any way affect their ability to be fair and

13

impartial, there was no response." (Emphasis added.) *Novak*, 94

*Ill. App. 3d at 1030-31, 419 N.E.2d at 399.*

The circumstances were quite different in *People v. Staten*, 143 Ill. App. 3d 1039, 493 N.E.2d 1157 (1986). In that case, during a recess, a young man standing outside the courtroom exchanged words with the bailiff escorting the jury. As the bailiff and jurors walked away, the young man yelled "that if he had a gun, he would kill all of us." The jurors proceeded to a restaurant without further incident. The defendant sought a mistrial on the basis of this incident. As noted earlier, the appellate court approved the denial of the motion for mistrial. The court found, after careful questioning of the individual jurors, that each had "stated unequivocally that they did not associate the incident in any way with defendant and that they could remain fair and impartial. Some even expressed surprise over being questioned, saying they had totally forgotten what had occurred. *Staten*, 143 Ill. App. 3d at 1057, 493 N.E.2d at 1168.

In the final case, *People v. Hunley*, 189 Ill. App. 3d 24, 545 N.E.2d 188 (1989), defendant was charged with murder and residential burglary. During deliberations the jury was sequestered in a hotel and several of the jurors were burglarized. There had been four jurors holding out for acquittal who voted to convict following the burglaries. The trial court questioned the jurors who had voted not guilty to determine if the hotel burglaries had influenced their change of vote. Although the appellate court did not specifically address whether the jurors associated the crimes with the defendant, the circumstances of the burglaries occurring while the jurors were sequestered and isolated from defendant, and the fact that defendant did not make any claim that the jurors associated these incidents with him both strongly suggest that no such association was made. The court found the jurors' explanations for the change of vote satisfactory and also stated

14

that the "strong evidence of defendant's guilt at trial decreased the likelihood that the guilty verdict was influenced by the burglary. *Hunley*, 190 Ill. App. 3d at 40, 545 N.E.2d at 199.

The differences between these four cases and the case at bar are, as previously argued, vastly different. Each involved actual and concrete incidents while the instant case presents an ambiguous situation that only became sinister through the assumptions of the complaining juror. More importantly, in the present case, the "threat" is clearly tied to the defendant in the minds of at least five jurors.

Thus this case lacks two significant indicators of the jurors' impartiality and lack of prejudice that were found in the earlier four cases. I believe there is a high probability that the involved juror was biased based on the "spin" she put on the incident. I further believe there is a significant risk that at least four other jurors were tainted by her description of and conclusions about the incident.

For these reasons, I would find that the denial of the motion for mistrial constitutes an abuse of discretion and that the defendant should have a new trial. I, therefore, dissent.